No. 81.—DANIEL HIGHTOWER and others, plaintiffs in error, *vs.* JOHN D. MUSTIAN, defendant in error.

[1.] Creditors of an insolvent corporation, whose charter has been forfeited, and who have exhausted their legal remedies against it, may sue in Chancery for the assets of that corporation, and have them applied in payment of their debts.

[2.] An assignment of assets of a bank, insolvent at the time, and about making a general assignment, and against which proceedings are pending to revoke its charter, made to a creditor cognisant of these things, and by collusion with him to defraud the other creditors: *Held,* to be void; and that the assets so assigned to him is a trust fund, to be applied to the payment of the debts of the corporation.

[3.] A bill defective for want of parties, must, generally, be demurred to specially, and the demurrer must show who are the proper parties.

[4.] A bill will not, generally, be dismissed for want of proper parties, but may be amended.

[5.] Exception to this rule stated.

In Equity, in Muscogee Superior Court. Decision on demurrer, by Judge ALEXANDER, May Term, 1850.

This bill was filed by Daniel Hightower, and other judgment creditors of the Planters & Mechanics' Bank of Columbus, alleging, that in 1842, the said bank borrowed of one John L. Mustian, ten thousand dollars in bills of the Central Bank of Georgia, (which were worth at that time 75 cents to the dollar) for which they agreed to pay interest at the rate of 16 per cent. per annum ; that at the time, the bank was largely indebted to complainants and others, far beyond its means and resources, and was then, and still continues to be, totally insolvent ; that shortly thereafter, the bank went into liquidation, and assigned all of its assets to Robert B. Alexander, for the benefit of its creditors, and in a few days after the assignment, the charter was declared forfeited by the decree of the Superior Court of Muscogee County ; that a few days before the assignment, and with a full knowledge of all the facts, John L. Mustian, combining and confederating with the bank to obtain a fraudulent and unjust preference over the other creditors, received in payment, or as security for his debt and the usury thereon, the sum of $25,000 of the bills of the bank, which he has since converted to his own use ; also a large num-

ber of solvent promissory notes, the property of the bank, together with the title deeds to a large quantity of land in Alabama, held by the bank as security for the payment of the notes—the exact amount of which notes, complainants were unable to specify. The bill charged distinctly three notes, amounting to more than $22,000, and that Mustian had collected on the assets received by him, upwards of $40,000. The bill charged the whole arrangement to be fraudulent and void.

The prayer was, that Mustian might be declared a trustee, and might be held to account for the assets received by him.

By an amendment to the bill, it was alleged that the complainants were wholly ignorant of the fraud charged in the bill, until day of November, 1848, and their bill was filed to the first Court thereafter; and that the proceedings to forfeit the charter were pending at the time the arrangement with Mustian was made, and was well known to him; and that at the time of the assignment, John Banks, as agent of the bank, agreed to pay Mustian 25 per cent. on his said loan, to be paid out of the said assets, until the same was paid.

To this bill, was filed a general demurrer for want of equity.

The Court sustained the demurrer, and this decision is brought up for review.

W. Dougherty, for plaintiff in error.

H. Holt, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

This bill was dismissed upon general demurrer, upon the ground, as the bill of exceptions states, " that the complainants showed by their own bill, that they were not entitled to the discovery and relief sought by the same." To the decision thus made, the complainants have excepted. The bill is filed by certain creditors of the Planters & Mechanics' Bank of Columbus, setting forth the ground of their claims, respectively, as creditors; that suits were instituted by them against said bank, judgments obtained, executions issued and returns of *nulla bona* made thereon; that said bank borrowed of the defendant, in 1842, ten thousand dollars in bills of the Central Bank of Georgia, which

were at that time worth only 75 cents in the dollar, agreeing to pay him for said loan, interest at the rate of 16 per centum per annum; that at the time said bank was so indebted to the defendant, Mustian, it was indebted, as stated, to the complainants, and to other creditors, four hundred thousand dollars, or other large sum, exceeding their means and resources to pay, and which it was then and is yet unable to pay, and was then and is now wholly and totally insolvent; that shortly after contracting said loan, said bank being fully apprised of its situation, in 1843, went into liquidation, and assigned all of its property and effects of every kind to Robert B. Alexander, of Muscogee County, for the benefit of its creditors, generally, who accepted the trust and undertook its execution; that a few days after the assignment, the charter of the bank was declared forfeited by a judgment of the Superior Court of Muscogee County, and thereby deprived of all its franchises and privileges; that whilst it was in this situation, after it had suspended and stopped specie payments, a short time before the execution of the assignment and the surrender of its charter, and in contemplation of these events, said bank and the defendant, John L. Mustian, combined, colluded and confederated together for the purpose of giving to him, said John L. a fraudulent and unjust preference over the complainants and the other creditors of the bank, and in a secret and collusive manner, assigned, transferred and delivered to him, said defendant, John L. in payment or as security for said debt and the usurious interest thereon, the sum of twenty-five thousand dollars of the bills of said bank, which he has converted to his own use; also a large number of promissory notes, the property of the bank, mostly given for lands, and secured by a reservation of the titles; that said notes were good and collectable, and that said John L. has in fact collected the money due on them; that the amount of effects so turned over to him, was disproportioned to the debt due him, and is a fraud on the other creditors; that at the time of the transfer, said John L. was fully apprised of the condition of the bank—that it had suspended and would soon go into liquidation, and that proceedings were then instituted to forfeit its charter; that the transfer is void, and the assets transferred, or money collected on them, is an equitable fund in his hands, which ought to be applied to the payment of the complainants and the other creditors. The bill prays that this assignment to Mustian be declar-

ed fraudulent and void, and that he be declared a trustee of the assets so transferred, for the creditors, and account with the complainants and pay to them their claims, and the balance be disposed of as the Court may direct. Such is the bill.

[1.] That creditors of an insolvent bank, whose charter has been forfeited, may, in Equity, sue for and recover the assets of the bank, and by decree, have them applied in payment of their claims, I do not for a moment question. The proposition is supported by authority—is sustained by reason, and is of the most obvious expediency. This question was settled by this Court upon solemn argument, at the present term, in the case of *Hightower vs. Thornton*, which preceded this. To the opinion of the Court in that case, I refer, without more. If then, upon the demurrer, the Circuit Judge held, that the complainants are not entitled to the discovery and relief sought, because, in the case made by the bill, *they are not entitled to sue*, we hold that he was in error.

[2.] Conceding the right of the plaintiffs to sue, upon what other ground are they not entitled to the discovery and relief? I confess I am wholly unable to divine. Can the decision have gone upon the ground that there was no equity in the bill—that conceding all to be true which the bill charges, yet, upon principle, they are not entitled to relief? Let us examine the case, with a view to the equity in the bill. By what law is it to be controverted? Leaving out of the enquiry all those rules which govern conveyances and assignments to one creditor in fraud of the rights of others, I place this cause alone upon a special Statute of this State. It is in the following words: "All conveyances, assignments, transfers of stock, effects or other contract made by any bank, in contemplation of insolvency, or after insolvency, except for the benefit of all the creditors and stockholders of said bank, shall, unless made to an innocent purchaser for a valuable consideration, and without knowledge or notice of the condition of said bank, be fraudulent and void." *Prince*, 633. This Statute is so plain that it does not require a single word of elucidation. The only enquiry is this—do the averments in the bill bring the plaintiffs' case within its operation? They do, and go beyond its requirements. The bill charges that the complainants have exhausted their legal remedies against the bank—they have sued it to insolvency ; *that the corporation is insolvent, and was insolvent at the time the assignment to Mustian was made ; that the officers*

*of the bank and Mustian knew of its insolvency, and that the assignment was made in contemplation of the general assignment and surrender of its charter ; that at the time when the assignment was made to Mustian, it was suspended and proceedings had then been instituted to revoke its charter, and that the officers of the bank and the defendant, Mustian, under all these circumstances, combined and colluded together to make the assignment to him, in order to defraud the complainants and the other creditors.* Could averments be plainer or stronger? Under them, there can be no pretence that the defendant is within the saving in the Statute in favor of innocent purchasers, without notice. If these averments are true, (and the demurrer admits their truth) the assignment to *Mustian* is fraudulent and void, and the complainants have a right to have it so declared by a decree. If void, then these assets are a trust fund in his hands, which Equity will lay hold of and appropriate to the debts of the bank. The case made by the bill, abounds in equity.

[3.] Whether the general assignee of the bank, Judge *Alexander*, ought not to have been made a party to this bill, seems not to have been decided by the Court below. The bill of exceptions does not show that it was, and we infer from the state of the pleadings that it was not. The demurrer was general. No special demurrer of any kind appears to have been filed. The non-joinder of parties is available, generally, by special demurrer ; and the demurrer must show who are the parties wanting, and this, that the plaintiff may amend. This is the general rule. *Daniel's Ch. Prac.* 335. 3 *P. Williams,* 369. 11 *Vesey,* 369. *Mitford's Eq. Plead. by Jeremy,* 180, 181. 4. *My. & Craig,* 17. *Story's Eq. Plead.* §543.

[4.] It has been held, however, that upon demurrer to a bill for want of equity, the objection that the bill is defective, for want of parties, may well be taken. See, *Note to Daniel's Ch. Prac. on page,* 619. The general rule is, no doubt, as first stated.

Be this as it may, when a bill is demurred to, for want of parties, and the demurrer sustained, the bill is not dismissed, but the party may amend. *Story's Eq. Plead.* §§541, 237, 884. 1 *Myl. & Craig,* 433. *Mitford's Eq. Plead. by Jeremy,* 326. 2 *Younge & Coll.* 297. 1 *P. Will.* 428. *S. C.* 1 *Stra.* 95. 3 *Atk.* 112. *S. C.* 1 *Dick. R.* 96.

[5.] The only exception to this rule is in cases where the nec-

Stocks and others *vs.* Leonard and others.

essary parties cannot be made. In that event, the bill will be dismissed. 3 *Bro. Ch. R.* 25. 7 *Cranch's*; *R.* 69, 99. *Story's Eq. Plead.* §§81, 86. We infer, then, (the bill being dismissed, the Court abiding the rule,) that there was no point made or decision had, as to defect of parties. Still, it appearing to us from the bill, that there was a general assignment, and the trust accepted, and farther, it being judicially known to us that the assignment and the designation of the assignee were affirmed, and Judge *Alexander* made the representative of the bank, by Act of the Legislature, we do not think it a departure from our duty to say, that he ought to be made a party, or some sufficient excuse be given why he is not made a party to this bill.

Let the judgment be reversed.