### LITTLE, ASSIGNEE, *v.* ALEXANDER.

1. When the issue to be decided is whether a judgment against an insolvent was obtained with a view to give a preference, the *intention* of the bankrupt is the turning-point of the case, and all the circumstances which go to show such intent should be considered.
2. Hence, when an ordinance of a State gave a preference as to time of trial in the courts in suits on debts contracted after a certain date, and the insolvent debtor gave his son and niece new notes for an old debt, so as to enable them to procure judgments before his other creditors, the fact that the ordinance was void does not repel the inference of intent to give and obtain a preference, and when a judgment was so obtained which gave priority of lien it will to that extent be null and void.

APPEAL from the Circuit Court for the Western District of North Carolina.

Little, as assignee in bankruptcy of J. R. Alexander, the father, filed a bill against T. L. Alexander, the son, to have

---

* 66 Pennsylvania State, 84.
† 10 Id. 451, cited and approved in 18 Wal'ace, 227.

certain real estate of the bankrupt, the father, and which had come as part of his assets to the complainant as assignee, relieved from the apparent incumbrance of a judgment which the son had got against it; the father having made no opposition to the obtaining of the judgment.

The court below dismissed the bill, and the assignee in bankruptcy took this appeal.

The judgment was docketed on the 19th day of May, 1869, and on the 1st day of September, within less than four months thereafter, the petition was filed on which the defendant was declared bankrupt.

*Mr. S. F. Phillips, for the appellant; Mr. H. W. Guion, contra.*

Mr. Justice MILLER stated the case, and delivered the opinion of the court.

The question in the case on which the decision of it must turn is, whether the bankrupt intentionally aided in the procurement of this judgment, in order to give his son a preference over his other creditors. We are of opinion that he did.

It is quite apparent that from the close of the late civil war Alexander, the father, was insolvent, and that this was well known to the son, to whom he was indebted between two and three thousand dollars. He also owed other debts, and his property consisted of two or three parcels of land, and perhaps a thousand dollars' worth of personal property.

By an ordinance of the State Convention of North Carolina of March 14th, 1868, which it is not necessary to give in detail, it was provided in effect that as to debts which were contracted prior to May 1st, 1865, judgments could not be rendered before the spring terms of the courts in 1869, and if there was opposition or defence they should be continued until the spring terms of 1870. Other obstructions were also interposed to the collection of the class of debts called old debts by this ordinance. This provision also applied to notes or obligations given after May 1st, 1865,

which were wholly in renewal of such old debts. But in suits on debts created after that time, or on notes where a part of the consideration was new, judgments could be obtained at the first term after suit was brought. This was the condition of the law as found in the statute-books of the State when, on the 1st day of January, 1869, the bankrupt gave his son, the appellee in this case, a note for the old debt and interest, and for twenty dollars, then first loaned to him. Nothing can be plainer, we think, considering the relationship of the parties, and the known insolvency of the father, than that the purpose of this transaction was to enable the son to get a judgment at the approaching spring term of the court on this note, as a new debt within the meaning of the ordinance, while his other creditors were left to the mercy which that ordinance held out to holders of old debts. If anything else were wanted to make clear this purpose, it is found in the fact that twenty dollars were included in the renewal note for money received at that time, to take it out of the class of renewals for debts wholly created before the 1st of May, 1865.

It adds strong confirmation of this view that a similar renewal was made in favor of Miss Hattie Alexander, a niece of the bankrupt, and in favor of the firm of which the son had been and was then a partner, and in favor of no others. In execution of this purpose suits were brought on these three notes, and judgments obtained on all of them for want of appearance at the May Term, 1869, of the State court, while suits brought on other debts were continued until another term.

To break the force of this evidence it is argued that the ordinance which gave this preference of new debts over old was unconstitutional and void. And in point of fact the Supreme Court of North Carolina so decided in January, 1869.

But this decision was made after the new notes were given, and it appears by the evidence that it was very well known at the time the new notes were given that the local judge would enforce the provisions of the ordinance. It is

the *intent* with which the new notes were given which must determine the validity of the lien of the judgment, and the unconstitutionality of the ordinance, if the parties believed it would be enforced, can have no influence in repelling the presumption of the intention to give and secure priority of judgment, and by that means a preference.

It is said that this case comes within the principle decided by this court in *Wilson* v. *City Bank*,* because in this case, as in that, the judgment creditor had no defence and made none.    But no careful reader of that case can fail to see that if the debtor there had done anything before suit which would have secured the bank a judgment with priority of lien, with intent to do so, that the judgment of this court would have been different from what it was.

The Circuit Court in this case submitted the question of fraudulent preference to a jury, but with the opinion of that court in the case, as found in the record, the jury was probably misled as to the law.    At all events, in such issues from chancery submitted to the jury their verdict is not conclusive, and we think the intent to secure a preference in this case by means of this judgment, both on the part of the bankrupt and the judgment creditor, so clear, that we feel bound to reverse the decree and to remand the case with instructions to enter a decree in favor of plaintiff, that the judgment of T. L. Alexander is void as against the assignee, and is no lien on the property of the bankrupt in the hands of his assignee.

DECREE REVERSED AND THE CASE REMANDED.