[No. 1509. Decided January 14, 1895.]

C. T. CONOVER, *Receiver, Respondent, v.* STEPHEN P. HULL
ET AL., *Appellants.*

C. T. CONOVER, *Receiver, Respondent, v.* BOSTON NATIONAL
BANK OF SEATTLE ET AL., *Appellants.*

INSOLVENT CORPORATION—PREFERENCES—DEFAULT JUDGMENTS.

The stock and property of an insolvent corporation, or one which is practically in that condition, is a trust fund for the payment of its debts, and such a corporation has no right to prefer a portion of its creditors to the exclusion of others.

The fact that the assets of a corporation are made to exceed its liabilities by computing its book accounts and bills receivable at their face value, when their actual value is really less, is not sufficient to negative a charge that the corporation is insolvent.

Judgment secured against an insolvent corporation by certain creditors, as the result of information given them by its officers of the insolvency of the concern, the pendency of the suits being kept quiet until the entry of judgment, one of the creditors holding back the filing of its complaint for that purpose by agreement with the other creditor until his service had ripened, shows such collusion between the corporation and these creditors as to constitute their judgments as preferences over other creditors.

*Appeal from Superior Court, King County.*

*Arthur, Lindsay & King* and *Strudwick & Peters,* for appellants.

*Struve, Allen, Hughes & McMicken (White & Munday,* of counsel), for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—The Bennett-Hull Furniture Company is a corporation organized under the laws of the State of

43-10W

Washington, and for the last five years has been engaged in the furniture business in the city of Seattle. Since its organization H. J. Hull has been its president, and H. F. Bennett its secretary and treasurer, and Alonzo Hull, vice-president, who was at the time of the commencement of this action one of its trustees. On March 13, 1894, Stephen P. Hull commenced an action on a note held by him, by serving summons and complaint on Bennett, as secretary and treasurer of the company, the service being made on the evening of March 13, 1894. The next morning Mr. Bennett notified the Boston National Bank, one of the appellants here, of the service of the papers in the Hull suit, and on the same day, March 14, 1894, the bank commenced its action by a similar service. No appearance was made by the company in either of these actions.

On April 3, 1894, the company was in default in the Stephen P. Hull suit, but by agreement between his attorneys and the attorneys of the bank, judgment was not entered until the next day, April 4, when the company became in default in the bank suit, and the complaints in both cases were placed on file, judgment entered and execution immediately issued and placed in the hands of the sheriff, and at once levied. By further agreement between the attorneys for Stephen P. Hull and the bank, the levy of the Hull execution was returned as a prior levy. Said levy was upon the entire stock and fixtures of the company, which constituted the entire available assets of the company, practically all the book accounts and bills receivable of any value having been previously assigned to the bank. On April 5, 1894, application was made by one of the creditors of the company for the appointment of a receiver. On April 6, 1894, before said application was heard, Walter & Co., a creditor of the furniture company, demanded payment of its claim, represented by promissory notes some of which were not yet due, and to enable suit to be brought the furniture company took up said notes and gave a demand note instead, upon which suit was begun at once; and on the next day the furniture company filed its answer in said

suit, confessing judgment, and judgment was entered and execution issued and levied immediately.

On April 13, 1894, the application for a receiver was heard and granted, and the receiver at once commenced these actions to enjoin the appellants and defendants from further proceeding on such judgment and execution. He secured the decree that they had no right to the prior payment out of the property levied upon, to the end that the assets of the insolvent company might be equitably distributed by the receiver among all the creditors of said company. Decree was rendered in favor of the receiver in each case, from which this appeal is prosecuted.

Before adverting to the facts in this case, we will notice the law propositions involved. The discussion, especially the oral argument, assumed a wide range, and counsel for appellants, with great earnestness, vigor and ability, assault what is frequently termed the "trust fund theory," viz., the doctrine enunciated by many of the courts that the property of a corporation is a trust in the hands of the managers of the corporation for the benefit of its creditors, insisting that the theory is an illogical and unjust one, and that there should be no distinction made in this respect between the property of a corporation and the property of an individual. The respondent insists that this court has allied itself with the advocates of the trust fund theory by its decision and announcements in the case of *Thompson v. Huron Lumber Co.*, 4 Wash. 600 ( 30 Pac. 741 ). We will not in this connection discuss the question whether the facts in that case were similar to those in the one at bar. We however held, on the legal proposition, that a voluntary preference by an insolvent corporation, was void; and that principle is the essentially distinguishing feature between the responsibilities and rights of a corporation and a private individual.

A further investigation of the subject and of the authorities contents us with the rule announced in that case; and we are satisfied that it can be amply sustained, not only by authority but by the clearest principles of right reasoning. To begin with, our statute law recognizes a distinction be-

tween the remedies of creditors as applied to their dealings
with corporations, by providing for the appointment of re-
ceivers to take charge of the property of corporations under
certain circumstances and conditions; and of course, after
the receiver is appointed, the property is in the custody of
the court, and the funds will be equitably distributed among
the creditors. While the liberty of a private individual is
in this respect in no wise circumscribed or controlled by law
so far as statutory enactments are concerned, and his cred-
itors are left to run a race of energy to obtain a vantage
ground.

The law having made this wise and equitable provision,
it is the duty of courts of equity to see that the pro-
vision is carried out to some practical effect ; and the reason
for this distinction is manifestly a just one. The creditor of
an individual debtor has more and better opportunities to
keep himself advised concerning his debtor's business and
financial standing; there are no limitations on the debtor's
financial responsibilities. It matters not how little he may
embark in the enterprise, he is individually responsible for
the debts which he incurs, no matter how great the amount,
and the creditor can safely disregard the particular busi-
ness in which he is engaged and rely on his individual
estate which he may know to be ample and which, with the
exception of a small exemption, must respond to his debts.
All this outside of the fact that an individual is liable to re-
cuperate his fortunes in the future, after he has failed, and
that there is hope of his paying his debts as long as he lives.
But not so with a corporation. It is an artificial creature of
the law. It is favored with certain limitations, and its re-
sponsibilities are only such as are made by statute. No mat-
ter what enormous debts it may incur, the stockholders are
only individually responsible to their creditors for the
amount of the capital stock which they own, and when the
indebtedness incurred exceeds the amount for which the
stockholders are responsible, then the unfortunate condition
exists of a debt for which no one is responsible. If the venture
of a corporation proves a successful one, the stockholders

receive the benefit; if it prove unsuccessful, their liabilities, as we have before said, are limited. Hence, it behooves the law to throw some additional safeguards in the interest of creditors around a business thus conducted, for when the corporation fails and goes out of existence, all chance for compensation to the creditor is forever gone. When the corporation is dissolved, as it will be dissolved when it no longer is a profitable enterprise, the creditor finds himself struggling with a myth or a nonentity, and is therefore absolutely helpless. There is no sentiment, either, in cases of dissolved corporations, which prompts the stockholders in after years to pay off the debts which they incur in the prosecution of the business of the corporation, as there is in the case of individuals; and altogether it seems to us that no violence is done in making this sharp distinction between the debts of an individual and of a defaulting corporation.

But, whatever may be said concerning the reason of this distinction, it has become so permanently engrafted in the law that it cannot now be disregarded. It was decided in *Bartlett v. Drew*, 57 N. Y. 587, that the assets of a corporation are a trust fund for the payment of its debts, and its creditors have a lien thereon and the right to priority of payment over its stockholders; that where the property of a corporation had been divided among its stockholders before all its debts had been paid, the judgment creditor, after the return of an execution unsatisfied, could maintain an action in the nature of a creditor's bill against the stockholder to reach whatever was so paid; and that it was immaterial whether the stockholder got it by a fair agreement with his associates or by a wrongful act.

In *Hastings v. Drew*, 76 N. Y. 9, the court said:

" The proposition is well settled, that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts."

The appellants cite § 864 of 2 Morawetz on Corporations, opposing this doctrine. That section seems to lay down the general proposition that a creditor of an insolvent corporation is entitled to pursue the ordinary legal and equit-

able remedies for the enforcement of his claims, unless he is restrained from doing so at the suit of the corporation or other creditors ; that he could not be prevented, except by instituting proceedings for the purpose of securing a general distribution of the assets ; that an execution may undoubtedly be levied upon the property of a corporation, although it may be insolvent at the time, unless a receiver or assignee in bankruptcy of the company's property has been appointed, or a restraining order has been issued in a proceeding to wind up the company. So far the text does not seem to affect the principle which we are discussing ; but the latter part of this section provides, or rather states the rule, that the appointment of a receiver or assignee in bankruptcy, after an execution has been levied upon the property of a corporation, would clearly not affect the right of an execution creditor to be paid out of the property levied upon ; and that, outside of the statutes affecting the law in such cases, the general rule is that, after the lien of an attachment has vested upon property of a corporation, it will not be divested by subsequent proceedings for winding up the company, unless the contrary be expressly provided.

This proposition seems to be based upon one case, viz., *In re Glen Iron Works*, 20 Fed. 674, where it was held that the lien of judgment creditors of an insolvent corporation, who had levied writs of attachment execution under the laws of Pennsylvania, was not affected by the subsequent appointment of an assignee in bankruptcy of the corporation. We are not aware what the statute of Pennsylvania was under which this ruling was made, but the announcement here does not seem to reflect the sentiment of the author, Morawetz, on this interesting subject, for, after stating the law as announced in *Ringo v. Biscoe*, 13 Ark. 563, which is that, in the absence of a statutory prohibition, a corporation has the same power to make a preference amongst its creditors as an individual, the author, in § 803, in the following vigorous language, proceeds to give his views :

" This doctrine, in the opinion of the writer, is wholly

indefensible on principle. The capital provided for the security of the creditors of a corporation is a fund held for the benefit of all the creditors equally. That the unsecured creditors of a corporation are entitled to an equal distribution of the common security has often been recognized by the courts of equity in adjusting the rights of creditors among themselves and in relation to the company's shareholders. After a corporation has become insolvent, and has ceased to carry on business, the rights of its creditors become fixed. If a corporation, whose assets are not sufficient to satisfy all of its creditors in full, can prefer certain creditors, leaving others unpaid, this must be by virtue of a power reserved by implication to the company and its agents. But this power cannot justly be included in the general powers of management which a corporation must necessarily possess over its property in order to carry on its business and further the purposes for which the company was formed. The purposes of a corporation are not furthered in any manner by giving it or its agents the power, after the company has become insolvent and has ceased to carry on business, and after its shareholders have lost their interests in the corporate estate, to prefer a portion of the creditors, according to interest or mere whim, and to pay their claims in full, leaving the others wholly without redress."

And, indeed, this doctrine does seem to be so entirely without reason as to be properly characterized as monstrous. When we come to think that this preferred distribution is made by the managers, who represent the stockholders who are in no way responsible for the debt, or at least that portion of it which is in excess of their liabilities, why should they, thus disinterested, be allowed to confer these benefits upon favorites to the exclusion of the rights of other honest creditors who have helped to furnish the means which constituted the very fund which is now being distributed to the exclusion of their interests? Certainly, it is but a just provision of law which holds that this fund, under such a condition, must be held intact as a trust fund for the equal benefit of all the creditors. The author above referred to, after asserting that the doctrine that the corporation may prefer certain creditors at the expense of others was first announced in *Catlin v. Eagle Bank*, 6 Conn. 233, proceeds to

say that it is a doctrine which is at variance with the whole theory of the law concerning the rights of creditors of insolvent corporations, and that it is contrary to the plainest principles of justice ; citing *Robins v. Embry*, 1 Smedes & M. Ch. 207 ; *Richards v. New Hampshire Ins. Co.*, 43 N. H. 263 ; *Hightower v. Mustian*, 8 Ga. 506 ; *Marr v. Bank of West Tennessee*, 4 Coldw. 471.

One of the earliest American cases sustaining the trust fund doctrine was *Wood v. Dummer*, 3 Mason, 308. The opinion was written by Judge Story, and among other things the learned judge says:

"It appears to me very clear, upon general principles as well as the legislative intention, that the capital stock of banks is to be deemed a pledge or trust fund for the payment of the debts contracted by the bank. * * * Credit is universally given to this fund by the public, as the only means of repayment. During the existence of the corporation it is the sole property of the corporation, and can be applied only according to its charter, that is, as a fund for payment of its debts upon the security of which it may discount and circulate notes. Why, otherwise, is any capital stock required by our charters? If the stock may, the next day after it is paid in, be withdrawn by the stockholders, without payment of the debts of the corporation, why is its amount so studiously provided for, and its payment by the stockholders so diligently required? To me this point appears so plain upon principles of law, as well as common sense, that I cannot be brought into any doubt, that the charters of our banks make the capital stock a trust fund for the payment of all the debts of the corporation. * * On a dissolution of the corporation, the billholders and the stockholders have each equitable claims, but those of the bill-holders possess, as I conceive, a prior exclusive equity ;" citing *Vose v. Grant*, 15 Mass. 505 ; *Spear v. Grant*, 16 Mass. 9 ; and some English cases, viz., *Taylor v. Plumer*, 3 Maule & S. 562, and *Hill v. Simpson*, 7 Ves. 152.

In Taylor on Private Corporations, § 655, the author says :

"There seems to be no longer the slightest question as to the firm establishment of this doctrine ;" citing *Sanger v. Upton*, 91 U. S. 56, where the court says :   "The capital

stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity.''

It would seem to us that, if this statement be true, that the creditors have a lien upon the property which comprises this fund, such lien would be absolutely worthless, if the stockholders through their managers were allowed to disburse the property through the medium of preferred creditors. Mr. Pomeroy, in his work on Equity Jurisprudence, 2d vol., § 1046, in discussing the question of trust funds, says courts regard property of private corporations, especially after their dissolution, as a trust fund in favor of creditors ; citing *Wood v. Dummer, supra,* and many other cases.

'' These statements,'' says the author, '' may be sufficiently accurate as strong modes of expressing the doctrine that such property is a fund sacredly set apart for the payment of partnership and corporation creditors, before it can be appropriated to the use of the individual partners or corporators, and that the creditors have a lien upon it for their own security ; but it is plain that no constructive trust can arise in favor of the creditors unless the partners or directors, through fraud or a breach of fiduciary duty, wrongfully appropriate the property, and acquire the legal title to it in their own names, and thus place it beyond the reach of creditors through ordinary legal means.''

We cite this statement of Pomeroy for the reason that it is noticed and commented upon as opposing the trust fund doctrine, by the supreme court of the United States in *Hollins v. Brierfield Coal & Iron Co.,* 150 U. S. 371 ( 14 Sup. Ct. 127 ) ; but while the learned author, Pomeroy, in dealing exclusively with names, says that the expression of trust in such cases is mostly metaphorical and that there is certainly nothing in the relation resembling a constructive trust, he has announced the doctrine that the creditors have a lien upon the funds for the payment of their debts, and so long as that

fact exists the substance of the trust fund theory is maintained, no matter by what name it may be called, whether it be a trust fund, a constructive trust, or what not.

Judge Story, in 2 Story's Equity Jurisprudence, § 1252,. discussing this question, says:

" Perhaps to this same head of implied trusts upon presumed intention (although it might equally well be deemed to fall under the head of constructive trusts by operation of law), we may refer that class of cases where the stock and other property of private corporations is deemed a trust fund for the payment of the debts of the corporation ; so that the creditors have a lien or right of priority of payment on it, in. preference to any of the stockholders in the corporation. Therefore if a corporation is dissolved, the contracts of such corporations are not thereby deemed extinguished, but they survive the dissolution of the corporation.  *  *  *  This, however, is a remedy which can be obtained in equity only ,. for a court of common law is incapable of administering any just relief, since it has no power of bringing all the proper parties before the court, or of ascertaining the full amount of the debts, the mode of contribution, the number of the contributors, or the cross equities and liabilities which may be absolutely required for a proper adjustment of the rights. of all parties as well as of the creditors."

If the theory of the appellants were true, that the trustees. of the corporation could prefer its creditors, and if they can prefer them at all they can prefer them to the extent of all the funds of the corporation, the court of equity before whom the case was brought for adjustment would sit helpless and with empty hands ; for it would be but a mockery of justice to bring the affairs of an insolvent corporation to a. court for adjustment and distribution when all the substance of the corporation had been transferred to the pocket or till of the favored creditor.  The supreme court of the United. States, in *Curran v. State of Arkansas*, 15 How. 304, in arguing this proposition and discussing the rights of the bank, says:

" That the charter, followed by the deposit of the capital stock, amounted to an assurance, held out to the public by the state, that any one who should trust the bank might. rely on that capital for payment, we cannot doubt.  And.

when a third person acted on this assurance, and parted with his property on the faith of it, the transaction had all the elements of a binding contract, and the state could not withdraw the fund, or any part of it, without impairing its obligation.''

And so it is with the corporations in this state. Parties who deal with these corporations under the law rely exclusively upon the funds of the corporation, recognizing the fact that they have no redress upon the private means of the stockholders ; and every principle of fair dealing demands, under such circumstances, that the fund upon which they rely and to which they extend their credit should be held as a sacred trust, and equitably and justly distributed by the court for their benefit.

The same doctrine was announced in *Sanger v. Upton*, 91 U. S. 56. In Perry on Trusts, § 242, the author says :

''Analogous to the gift or sale of the trust property by trustees is the right of dealing with its property by a corporation. A corporation holds its property in trust, first, to pay its creditors, and second, to distribute to its stockholders *pro rata*.''

In Wait on Insolvent Corporations, § 162, is found the following tersely expressed opinion :

''The rule that the property of a corporation is a trust fund to be applied for the equal benefit of all its creditors, is, as we have seen, constantly struggling for recognition in the cases. The funds of a corporation may be regarded as pledged exclusively for the payment of the debts of the corporation. The private property of the stockholders is not liable, nor is there at common law any individual responsibility on the part of the directors for corporate obligations. The corporate property is, then, the sole source to which the creditors must resort. The assets, as we have seen, might properly be considered as a special fund or property, set apart in law, in lieu of the private property of the corporators, to which resort may be had for the payment of the debts of the corporation. The directors and managers of an insolvent corporation are regarded as trustees of the corporate funds, and for that reason should make a *pro rata* distribution among the various creditors, and hence it has been held that the trustees will not be permitted to prefer debts for which they are themselves personally liable. The struggle,

both in the statutes and in the cases, has been to suppress preferences, which are justly regarded as a crying evil with which our insolvency and bankruptcy laws seem inadequate to cope.   A court of equity, it may be observed, will interfere and appoint a receiver of a bank when the officers have been making preferential payments.   While the existence of the right of a failing debtor to prefer one creditor to another in the distribution of his property has often been regretted, it is recognized both in courts of law and of equity.   Cases may be cited upholding the right of a corporation, unrestricted by statute, to make a preferential assignment.  The rule is quite firmly established.   The practical working of the rule sustaining corporate preferences is monstrous.  The unpreferred creditors have only a myth or a shadow left to which resort can be had for payment of their claims ; a soulless, fictitious, unsubstantial entity that can be neither seen nor found.  The capital and assets of the corporation, the creditors' trust fund, may, under this rule, be carved out and apportioned among a chosen few, usually the family connections or immediate friends of the officers making the preference.  This rule of law is entitled to take precedence, among the many reckless absurdities to be met with in the cases affecting corporations, as being a manifest travesty upon natural justice.''

This language, though seemingly turgid and vehement, is, notwithstanding, we think, justified by the injustice which is frequently effected by sustaining the rule criticised.

In *Rouse, Trustee, v. Merchants' National Bank*, 46 Ohio St. 493 (22 N. E. 293), it was held that a corporation, after it had become insolvent and ceased to prosecute the objects for which it was created, could not, by giving some of its creditors mortgages on the corporate property to secure antecedent debts, without other consideration, create valid preferences in their behalf over the other creditors, or over the general assignment thereafter made for the benefit of creditors.   This case, it seems to us, is on a level with the case under consideration.   It is true that the corporation in that instance was insolvent, but as we shall hereafter see, the corporation in the case at bar, as we view it, was practically insolvent, also.   In the case above referred to the court said :

"It is obvious, that the corporate property cannot with propriety be said to be owned by the corporation, in the sense of ownership as applied to property belonging to natural persons. The latter may without restriction acquire and dispose of property for any lawful purpose, while both the power of acquisition and disposition of the former are limited to special objects already mentioned. The corporate property is in reality a fund set apart to be used only in the attainment of the objects for which the corporation was created, and it cannot lawfully be diverted to any other purpose. As soon as acquired, it becomes impressed with the character of a trust fund for that purpose, and the shareholder or creditor may interpose to prevent its diversion from the objects of the incorporation, injurious to him."

To the same effect are a very large majority of the cases that have been adjudicated on this subject. It must be admitted that there are courts which have held the contrary doctrine, and the cases of *Hollins v. Brierfield, etc., Co., supra*, and *Varnum v. Hart*, 119 N. Y. 101 (23 N. E. 183), are notable instances; but with the most profound respect for the United States supreme court, we are unable to endorse the logic of their decision in the case last mentioned, and think that the result of such logic would be to destroy the efficacy of statutory law which is made distinguishing the collection of debts from private individuals from the collection of debts from insolvent corporations. It is insisted by the court in *Hollins v. Brierfield, etc., Co.*, that the doctrine of trust funds is not to be disregarded, but that it only attaches after the corporation has actually become insolvent, and the property of the corporation has passed into the hands of the court through its agent, the receiver. This, as we have said before, it seems to us would practically destroy the doctrine altogether, and render the appointment of a receiver for the purpose of justly distributing the estate of the insolvent corporation a useless task. And it is opposed to the rule announced by this court in *Thompson v. Huron Lumber Co., supra*, that "when a corporation has reached a point where its debts are equal to or greater than its property, and it cannot pay in the ordinary course, and its business is

no longer profitable, it ought to be wound up and its assets distributed.''

Discussing the case, then, upon the theory that an insolvent corporation has no right to prefer creditors, two questions are presented: (1) Was this corporation insolvent at the time these judgments were obtained; and (2) was there collusion between the corporation and the judgment creditors. On the first proposition, we think the corporation was practically insolvent at the time these actions were commenced. It is true that, according to the showing made to the bank of the company's business, the assets exceeded the liabilities; but the book accounts and bills receivable were computed at their face value, and every business man knows that such a computation falls far short of representing the actual assets of a mercantile establishment; and the result in this instance abundantly proves the unreliability of the showing made. Hence the anxiety to maintain these preferences.

We are also of the opinion that the testimony, construed by the light of all the circumstances, shows a collusion between the corporation and the judgment creditors. According to all the testimony the business had been a losing one for several months; debts were pressing, which the company was unable to pay; and it is noteworthy that the first action which was instituted was instituted by Stephen P. Hull, the father of H. J. Hull, who was the president of the corporation; and that the plaintiff in the action was the brother of Alonzo Hull, who was a trustee and vice president of the corporation, and who was really the moving factor in the suit, he having brought the suit as agent for his brother. Most confidential relations may be presumed to have existed between the plaintiff and defendant, and under ordinary circumstances a father would be the last person to take the initiative in instituting legal proceedings against the interests of the son, especially when under the circumstances such proceedings would surely inaugurate a series of suits which could but result in financial ruin.

This case strikingly presents the pernicious doctrine con-

tended for that a corporation, under the circumstances, has a right to prefer its creditors. The vice president and trustee of the company, who is presumed to know all about its condition, brings the action at a critical juncture for his brother, and serves the summons on the president of the company, who is the son of the claimant and nephew of the agent. No complaint was filed and the service was practically a secret one, and the claim could go to judgment and a preference lien be established before other creditors were aware that the fund was in danger; the practical result would be the same as if the corporation had confessed judgment in favor of the claimant.

While there is no law, either civil or moral, which will deprive a citizen of his legal remedies against a corporation which is owned and controlled by his relatives, yet the circumstances of this case convince us that the managers of the corporation were satisfied that they could not weather the financial storm which had overtaken them, and they proposed to make their relatives good at the expense of the other creditors. The next morning after the service of the Hull summons, the secretary of the company notified the appellant bank of the commencement of the Hull suit, and immediately the bank commenced suit by serving summons in the same manner in which it had been served in the Hull suit. No notification was given to any other creditors, although some of them were engaged in business in the same block in which the business of the defaulting corporation was carried on.

It is insisted upon by the appellants that as long as a corporation does no affirmative act to assist the creditors to obtain their judgment, no inference of collusion can be drawn, and that the obligation does not attach to make a helpless or dilatory fight on a suit to which there is no defense. Certainly we think it was not the duty, or even the right, of this corporation to expend its funds in unavailing litigation ; but the company did some affirmative act, in the case of the bank at least. It discriminated in favor of the bank in the knowledge it imparted of its real condition. It affirma-

tively notified it of that condition, which resulted in the bank commencing proceedings to secure its indebtedness. And if the theory of the appellants should be sustained, no matter what the intention was, the practical result would be that by reason of this affirmative action of the company, the bank would recover its whole claim to the exclusion of the rights of the other creditors.

Of course, there is no absolute or definite proof here that there was an attempt to prefer. The company did not say to Hull and the bank, "We want to prefer you," and they probably did not say in so many words that they wanted to be preferred; but the bank at least was furnished by the company with data sufficient to inspire desire in it to be preferred, and its prompt and vigorous action in response to that information speaks with more emphasis than any mere form of words.

In *Giddings v. Dodd*, 1 Dill. 116, it was held that creditors who receive an illegal preference are liable to the assignee of the bankrupt, and that the intent of the debtor to give, and of the creditor to secure, an unauthorized preference may be shown by circumstances. Of course this *must* be true, for such intentions could never be proven.

In *Buchanan v. Smith*, 16 Wall. 277, it was held that a creditor has reasonable cause to believe his debtor insolvent when such state of facts is brought to his notice respecting the affairs and pecuniary condition of his debtor as would lead a prudent business man to the conclusion that he, the debtor, is unable to meet his obligations as they mature in the ordinary course of business. It is insisted by the appellants that the doctrine announced in this case was overturned in *Wilson v. City Bank*, 17 Wall. 473. There were some announcements made in *Buchanan v. Smith*, which seem to have been overruled in *Wilson v. City Bank*, although the court undertook to distinguish that case from the case of *Buchanan v. Smith*. The principal correction, however, made by the court to the principles stated in the former case was as to the necessity of any affirmative action on the part of the bankrupt to prevent the judgment and

levy ; it having been announced in *Buchanan v. Smith* that a debtor who suffers his property to be seized on execution, when knowing himself to be insolvent, should apply for the benefit of the bankrupt act ; and the court in *Wilson v. City Bank* decides that there is no legal obligation on the debtor to file a petition to prevent the judgment and levy, and that a failure to do so is not sufficient evidence of an intention to give a preference to the judgment creditor and to defeat the operation of the bankrupt law. But the court in the latter case says that : " Very slight circumstances, however, which tend to show the existence of an affirmative desire on the part of the bankrupt to give a preference or to defeat the operation of the act, may, by giving color to the whole transaction, render the lien void ;" and that these special circumstances must be left to decide each case as it arises.

In *Little, Assignee v. Alexander*, 21 Wall. 500, it was held that when the issue to be decided is whether a judgment against an insolvent was obtained with a view to give a preference, the *intention* of the bankrupt is the turning point of the case, and all the circumstances which go to show such intent should be considered. In that case the insolvent debtor gave his son and niece notes for an old debt so as to enable them to procure judgments before his other creditors ; and it was held that the preference growing out of the transaction was void.

In *Denny v. Dana*, 2 Cush. 160 (48 Am. Dec. 655), it was held that a preference will be avoided, if made by one who is insolvent with intent to give a preference to a creditor who had a reasonable belief that the debtor was insolvent or in contemplation of insolvency ; and that the intent to give a preference would be inferred where such preference was the natural and probable result of the acts done.

As we have before said, the preference established by the bank in this case, if the result of the litigation is to establish a preference, which is what the bank maintains here, was the direct result of the act of the corporation in informing it of the commencement of the suit by Hull. It also

44-10W

appears that when the company was in default in the Hull suit an agreement was made between the attorneys of Hull and the attorneys of the bank that judgment should not be entered in the Hull suit until the next day, when the company would become in default in the bank suit; and the complaints in both cases were placed on file, judgments entered and executions immediately issued and placed in the hands of the sheriff and at once levied.

An affidavit setting up this state of facts was objected to and excluded by ruling of the court. We think that this testimony should not properly have been excluded ; that it was one of the circumstances tending to show a collusion and a suppression of knowledge, so far as the public was concerned, until the judgment of the bank could be obtained.

All the circumstances surrounding this litigation convince us that the insolvent condition of this company was known to the appellants ; that there was a desire on the part of the company to prefer these appellant creditors, and that the condition of the company was made known to them for the express purpose of warning them that they should not delay in the commencement of their actions ; and that the result of this knowledge and action on the part of the company and of these appellants was to obtain liens upon the property of this corporation in fraud of the rights of other creditors.

The judgment will, therefore, be affirmed.

HOYT and STILES, JJ., concur.