[No. 3376. Decided April 24, 1901.]

WELLINGTON STROHL, *as Receiver, Appellant,* v. SEATTLE NATIONAL BANK *et al., Respondents.*

CORPORATIONS — INSOLVENCY — FRAUDULENT PREFERENCE OF CREDITORS.

Where, at the time of the execution of a mortgage by a corporation to secure its indebtedness to one of its creditors, the total indebtedness of the corporation did not exceed sixty-six per cent of a conservative valuation of the corporate assets, and the corporation, at the date of the execution of the mortgage, was doing business, with its affairs in equally as good condition as at any time during its existence, and with every indication of their continuance in the same condition, and it in fact continued to do business for several months thereafter, when it finally became insolvent, such mortgage will not be set aside at the suit of a receiver, on the ground of its being a fraudulent preference by an insolvent corporation.

Appeal from Superior Court, King County.—Hon. JOHN H. POWELL, Special Judge. Affirmed.

*Ira Bronson* and *James B. Howe,* for appellant.

*Bausman, Kelleher & Emory* and *Strudwick & Peters,* for respondents.

PER CURIAM.—This cause is appealed from the superior court of King county. On the 19th day of December, 1898, the plaintiff in the action, appellant here, was duly appointed by said court as receiver of the Skookum Box & Lumber Company, a corporation. He thereafter duly qualified as such receiver, and ever since has been, and now is, such receiver. The said company had theretofore owned and operated two manufacturing plants; one at South Bend, Washington, and one at Seattle, Washington. The plant at South Bend was largely confined to the manufacture of lumber for use in making boxes, and the one at Seattle was chiefly used for manufacturing boxes. On the 9th day of July, 1898, said company executed to one H. W. Castleman a chattel mortgage upon the said manufacturing plants and other property of said company to secure the payment of three promissory notes for money theretofore loaned and advanced by said Castleman to said company, as follows: One note dated November 23, 1897, for $1,000; one dated December 31, 1897, for $948.40, and one for $3,794.09, dated June 28, 1898,—all of the notes being payable on demand. It was agreed between the parties to said mortgage that the mortgagee would forbear bringing suit upon said notes and mortgage for a period of ninety days. Soon thereafter said notes and mortgage were duly transferred, for a valuable consideration, to the respondent Seattle National Bank, and after the expiration of three months, the debts secured by said mortgage not having been paid, said bank instituted suit in the superior court of King county for the purpose of obtaining a decree foreclosing said mort-

gage. In December, 1898, such decree was obtained, and an order of sale was issued thereunder directing the sale of the mortgaged property both in King and Pacific counties. Meanwhile one Gregory Ellsworth had obtained a judgment against said Skookum Box & Lumber Company in foreclosure of certain laborers' liens amounting to $589 and costs, and had caused writs to be issued and levied against the property of said corporation, and was seeking to enforce said judgment as a preferred claim against said property. Thereupon the appellant, who had meantime been appointed receiver, as aforesaid, instituted this action, and he alleges in his complaint that the said corporation was insolvent at the time the said notes and mortgage were executed, and asks that all the respondents, viz., the holders of the said judgments and the sheriffs of King and Pacific counties, respectively, shall be enjoined from proceeding further with said sales, and that the said sheriffs be commanded to deliver to said receiver all the property, goods, and effects in their possession belonging to said Skookum Box & Lumber Company. The prayer of the complaint further asks that the said mortgage be declared and held to be in fraud of the creditors of said corporation, and that the same be set aside and held for naught as a preferred claim or lien upon the assets of the corporation. The insolvency of the corporation was denied by the respondents. A trial was had before the court, and, after hearing the evidence, the court found, in substance, that said Skookum Box & Lumber Company was organized as a manufacturing and mercantile corporation under the laws of this state in the month of August, 1897, its chief purpose being the manufacture and sale of lumber, particularly boxes, and that it was so engaged continuously from its organization to about the 19th day of November, 1898; that during said period of continuous opera-

tion of its business it did not at all times meet its obligations promptly as they matured, but this was due in large part to the investment of its profits in improvement of its plants; that in July, 1898, the conservative value of its two plants was $13,000 or $14,000, free and unincumbered; that it had other assets at said time, consisting of accounts receivable, which were good, of lumber and stock in Seattle and at South Bend, to the amount of at least $3,330.50; that the total amount of its indebtedness, including that afterwards included in said mortgage, was $11,000; that said Castleman was the president of said corporation continuously from its organization up to the 21st day of July, 1898, was the holder and owner of a large portion of its stock, and from February, 1898, to July 21 of the same year, was the owner of one hundred and forty-four shares of a total of two hundred shares of stock; that from time to time from its organization up to the 28th day of June, 1898, the said Castleman had advanced and loaned to said corporation sums of money in the aggregate of $5,096.48, for which he held demand notes of said corporation payable to his order, which said advances were made by him to the corporation as a banking loan, or the advance of additional capital on his part; that on the 9th day of July, 1898, said Castleman, being pressed by a creditor of his own for payment, requested of said corporation security for its indebtedness to himself, that he might use the same wherefrom to pay the said creditor, and thereupon the mortgage aforesaid was executed by said corporation, covering its plants in Seattle and South Bend, excluding lumber and stock on hand, book accounts, and a horse and wagon belonging to the company,—said Castleman agreeing at the time to forbear any suit upon the notes or mortgage for ninety days; that the mortgage was duly acknowledged, verified with proper affidavit, recorded, and

on or about July 9, 1898, assigned, together with the mortgage indebtedness, to the respondent Seattle National Bank; that the mortgage was in truth and in fact given by said company and received by said Castleman in good faith, and without any intention on the part of any one to hinder, delay, and defraud any of the creditors of said company, and the assignment was made by said Castleman and accepted by said bank in good faith and without any such intention; that, although at the time of the execution of said mortgage the corporation did not have on hand ready money sufficient to pay said mortgage debt in full, yet its business and affairs were in equally as good condition as at any time during its course of business. It was doing business, was a going concern, was solvent, and there was every reason to anticipate the continuance of its business under such condition; that on or about the 21st day of July, 1898, for a valuable consideration, said Castleman sold, assigned, and set over to the respondent C. E. Vilas (substituted also as defendant and respondent for Gregory Ellsworth, whose assignee he was) the balance due on said notes and mortgage in the hands of the Seattle National Bank after the payment of the bank claim, and requested the said bank in writing to recognize such assignment, which was by the bank duly accepted; and at the same time said Vilas, for a valuable consideration, became the owner of all of said Castleman's interest in the stock of said Skookum Box & Lumber Company. Other facts are set forth in the record as found by the court, but we do not deem them of sufficient materiality to be set forth here. Based upon the material facts as hereinbefore set forth, the court entered the following conclusions of law:

"1. That the notes and mortgage made by the Skookum Box & Lumber Company to H. W. Castleman, in the hands of the Seattle National Bank for its own interest and as

trustee of defendant C. E. Vilas, for the balance and the judgment based thereon herein sought to be set aside and enjoined, were and are a valid and subsisting debt of said company, and lien upon the property in said mortgage described, and prior to any rights or claim therein on the part of the receiver, Wellington Strohl.

"2.   That at the time of the execution of said mortgage and the notes thereby secured, the said corporation was solvent and a going concern.

"3.   That the judgment of the defendant Gregory Ellsworth is a valid and subsisting lien upon all of the Seattle plant, factory, and property of the Skookum Box & Lumber Company as against the receiver and the creditors represented by him."

Decree was entered in accordance with the foregoing conclusions of law, and from such decree the receiver has appealed.

The material question for our consideration is, Did the court properly find the facts upon the evidence submitted? A careful examination and analysis of the evidence leads us to the same conclusion as that of the trial court.   It is true, the mortgagee was the president of said corporation and was the holder of a large amount of stock therein, but there is no doubt under the evidence that the corporation owed him the amount represented by the notes for cash loaned and advanced, and which was used to enlarge and improve its plants and carry on its business.   Transactions of this character between a corporation and its officers call for the most careful examination and searching scrutiny. We are, however, unable to discover anything in this record that indicates want of good faith on the part of any one concerned.   The money was received by the corporation, and its plant and assets were increased to the amount thereof.   Such a debt can be secured by the mortgage of a corporation unless such corporation at the time

the mortgage is executed be insolvent or in imminent danger of insolvency. The evidence in this case shows that when this mortgage was executed the corporation was a going concern, was doing as good a business as it had ever done during its existence, had for some months been doing a business of from $3,000 to $4,000 a month, and continued for months afterwards in the regular and ordinary conduct of its business. It is, we think, clear from the evidence that when this mortgage was executed the company's anticipations were really more assured than they had ever been before. The salmon-canning season was just opening, a number of good orders for boxes had already been placed with the company, and others were in prospect. The company was organized near the close of the salmon-canning season of 1897. The season of 1898 was the first full season since its organization, and the demand for the product of its manufacture was good. On July 22, 1898,—just thirteen days after the execution of the mortgage in question,—said Castleman, who was then president of the company, sold his stock and retired from the active management of the company, which he had theretofore supervised from the time of its organization. He was succeeded by the aforesaid Vilas, who shows by his own testimony that he did not give the business of the company proper attention, but left the superintendent of the mechanical and manufacturing department in charge, not only of the details of manufacture, but of the financial part of the company's business as well. We believe the evidence shows that a continuance of the same methods of management which were observed by the company at the time the mortgage was made would have saved it the embarrassment which overtook it a few months later. As it was, its business continued for months afterwards, and other creditors continued to extend credit, not-

withstanding the existence of this mortgage, the record of which was due notice to all of that much, at least, of its indebtedness.    The court's findings show that a conservative valuation of the company's assets at the time of the mortgage was $5,000 in excess of its indebtedness, the indebtedness being about sixty-six per cent. of the conservative valuation of the assets.    We think the evidence justifies this finding of the court.

Appellant's counsel contend that this case falls within the same rules as the following cases: *Thompson v. Huron Lumber Co.,* 4 Wash. 600 (30 Pac. 741); *Conover v. Hull,* 10 Wash. 673 (39 Pac. 166, 45 Am. St. Rep. 810); *Biddle Purchasing Co. v. Port Townsend Steel Wire & Nail Co.,* 16 Wash. 681 (48 Pac. 407).    We think not. In the case of *Thompson v. Huron Lumber Co., supra,* the coure uses this language:

"When it has reached a point where its debts are equal to or greater than its property, and it cannot pay in the ordinary course, and its business is no longer profitable, it ought to be wound up and its assets distributed."

Such conditions are not shown to have existed in this case when the mortgage was made.    In *Conover v. Hull, supra,* the court found that, although the nominal value of the assets, including book accounts and bills receivable, was greater than the liabilities, yet the actual value was much less.    Such is not the condition found by the trial court in this case; but, upon the contrary it appears that a conservative estimate makes the sum of the indebtedness only about two-thirds of the amount of the assets.    In *Biddle Purchasing Co. v. Port Townsend Steel Wire & Nail Co., supra,* the court found that for some time the corporation had been unable to operate its works and plant, and that they were idle; that the corporation was insolvent, and that its officers

knew it was insolvent, at the time the mortgages were executed.

We believe the trial court was right in adjudging this to be a valid mortgage at the time of its execution. If valid then, it remained so, notwithstanding the corporation may have drifted into insolvency some months afterwards.

The judgment is therefore affirmed.