4 600
f25 35

4 600
26 315

4 600
36 93

4 600
e37 471

[No. 437. Decided July 14, 1892.]

## STANLEY P. THOMPSON, *Trustee, Appellant,* v. HURON LUMBER COMPANY, *et al., Respondents.*

ACTION BY TRUSTEE—INSOLVENT CORPORATIONS—PREFERENCE—INTERVENTION—RECEIVER.

A trustee named in a mortgage to secure the payment of certain notes is the proper party to institute foreclosure thereof, whether he has the legal title to any of the notes or not.

A mortgage to a trustee, made by an insolvent corporation to secure the payment of certain notes, providing that the mortgagor should remain in possession of the property and conduct the business as before, paying all expenses and applying the surplus to the payment of the debts secured, and further providing that all renewals and extensions of the notes are to be secured, and no renewal or extension shall be construed as payment, is voidable by creditors, on the ground that it is a device to continue indefinitely the corporate life of an insolvent corporation, and tends to hinder and delay other creditors.

A voluntary preference by an insolvent corporation is void.

Under Code Proc., § 156, providing that parties may intervene in an action "before trial," a complaint in intervention is in time, although not filed until after a motion in the principal action for a default against the defendant.

A contract creditor, without judgment or other lien, cannot intervene in a foreclosure suit.

Where a receiver has been appointed for an insolvent corporation, he is a trustee for the corporation and all of its creditors, including those not intervening in the action wherein he was appointed; and a *bona fide* creditor, though an illegal preference was attempted to be created in his favor, is entitled to share in the funds on the same basis with other creditors.

The fact that a creditor is a stockholder and director in an insolvent corporation does not estop him from participating in the fund in the receiver's hands.

Under Code Proc., § 1439, providing that the petition for rehearing in a cause shall be the argument of the applicant therefor, the applicant for rehearing is not entitled to argue his application orally before the court.

*Appeal from Superior Court, King County.*

*Gale, Fay & Henderson,* and *Julius A. Stratton* (*C. H. Gest,* of counsel), for appellant.

*Allen & Powell* and *Winsor & Farwell,* for respondents.

The opinion of the court was delivered by

STILES, J.—Appellant's right to sue cannot be questioned, as he was the trustee named in the mortgage, and was the proper party to institute a foreclosure, whether he held the legal title to any of the notes or not.

The court below found the mortgage, which covered both real and personal property, to be void as against the creditors of the Huron Lumber Company, because after the execution of the mortgage, which was made to secure pre-existing debts, the company, by agreement with the appellant, or rather his *cestui que trust,* the Boston National Bank, continued its business in every respect in the same manner as it had done prior to the execution of the said mortgage, selling lumber from its yard for cash and on credit, selling goods from its store in the usual course of trade, applying the proceeds of said sales in the ordinary course of its business, and in the payment of prior debts as well as current debts, other than those secured by the mortgage, and that there was no change made in conducting its business; all of which was done with the knowledge and consent of the Boston National Bank, none of the proceeds of the business being applied upon the mortgage debts. The substance of this finding is scarcely contested by the appellant. He challenges examination of the evidence in the case for any showing that the Boston National Bank ever agreed or consented to the doing of any of the things found to have been done either before, at or after the execution of the mortgage; and, without reviewing the testimony, it may be conceded that there is no such showing

But he does not deny that these things were done, and we think we see upon the face of the mortgage itself the agreement that just such things should be done. The mortgage recites that the mortgagor is engaged in the business of logging and procuring logs and timber, and manufacturing lumber of all kinds, and buying and selling the same, and the products thereof, and is the owner of certain lands, timber lands, timber, sawmills, railroads, cars, rolling stock, engines, tools, appliances, utensils, buildings, stores, shops, franchises and other rights and property in King and Snohomish counties. The operative and descriptive parts of the mortgage cover all of this property, without particular description, and further include "all other property of the said party of the first part, of whatever kind or nature, now held or hereafter to be acquired," and all legal and equitable claims as well. The next important provision is that the notes then held by the bank and Ball, and all renewals and extensions of them, are to be secured, and that no renewal or extension shall be construed as payment of the existing notes, which were demand notes. No time for payment was mentioned in the mortgage. Finally there was the following stipulation:

"(4) Until default be made by said party of the first part in the payment," etc., "the said party of the first part, its successors or assigns, shall be suffered and permitted to possess, operate, and enjoy all and every of the property and premises hereby conveyed, with all the appurtenances, rights, privileges, immunities and franchises hereinbefore mentioned, and to carry on the business of logging, manufacturing and selling logs, lumber and manufactures thereof and may cut and remove any timber and trees standing on lands owned by the party of the first part, and any other timber or trees owned by said party of the first part, in the ordinary course of the business of logging, selling logs, timber, lumber and the manufactures thereof; and the cutting and removing of any such logs, trees or timber shall not be deemed waste or a violation of any of the cov-

enants or agreements herein contained, but the proceeds of all such sales, after deducting the actual expenses of operating and carrying on the business of said company, shall be paid to the party of the second part on the debts hereby secured."

It seems to us that the irresistible conclusion from the stipulations must be that the mortgage was designed to act as a shield between the corporation and its other creditors while it prosecuted its ordinary business for an indefinite length of time, since the provision with regard to renewals would continue the existence of the mortgage at the will of the parties to it, to at least the time when the statute of limitations would run against it. This will not do in the case of an insolvent corporation, no matter what the good faith of its creditor is. When it has reached a point where its debts are equal to or greater than its property, and it cannot pay in the ordinary course, and its business is no longer profitable, it ought to be wound up and its assets distributed. Therefore no device can receive the countenance of the courts which provides for an indefinite continuance of its corporate life under the protection of a mortgage, against the protest of those who are entitled to share in its property, be it much or little. The hindrance and delay contemplated by the terms of the instrument ought to render it null and void, and this constitutes an additional ground to that assigned by the court below for so treating it. Such an instrument is not within the liberal but just construction given to chattel mortgages in *Ephraim v. Kelleher, ante,* p. 243, nor does the determination of the question, whether it is fraudulent or not, require use of the principle that fraud is a question of fact, and not of presumption. The paper itself speaks and provides for the hindrance and delay which the law does not permit, whether the subject matter of the mortgage be real or personal property. It is argued that no hindrance or delay was intended

by the mortgagee, because he brought his foreclosure suit within two weeks after he received it. But he need not have brought it for two months or two years, as he saw fit. It was the pressure of other creditors besieging the company's office until the president "went wild" that precipitated the action.

But, for another reason, we should hold this mortgage bad. The indebtedness evidenced by the notes was long overdue; the directors of the company could not agree; the business was practically stopped, and the corporation was insolvent. The insolvency was formally adjudged fifteen days after the mortgage was made, upon the petition of the appellant himself. In that time no material change took place in the company's affairs. For many months it had been embarrassed, could pay nothing upon its debts, and was merely using up its property without profit over working expenses. Ball, who was a director, knew all this; and it is useless to argue that a creditor of the dignity of a national bank was not informed. Under these circumstances a court of equity in this state ought not to enforce any voluntary preference attempted by the directors of a corporation. It is cited to us that in *Nyman v. Berry*, 3 Wash. 734, we upheld a general assignment made by a corporation. So we did. But there were no preferences in that assignment. But had there been preferences it would not necessarily follow that the assignment should fail, although the preferences would. Much has been said by courts about this matter of preferences by insolvent corporations, and we are urged to hold with those which uphold them, on the ground that, inasmuch as a common law assignment which contained them was good, and, as we have held that a corporation can make a common law assignment, the logic of the position is that insolvent corporations may make preferences. But we cannot lose sight of the settled rule concerning the property of insolvent cor-

porations, viz., that it is a trust fund for creditors, wherein there is a difference between property of a corporation and that of a natural person. Without enlarging upon a discussion of the subject, we note a remarkably clear and forcible case in *Rouse v. Merchants' National Bank*, 46 Ohio St. 493, 15 Am. St. Rep. 644, which sustains the position we take. There is an additional reason, however, in this state, viz., that our courts are expressly authorized by statute to appoint receivers of corporations which are insolvent, or are in imminent danger of insolvency. Code Proc., § 326, subd. 5. The purpose in thus placing insolvent corporations in the possession of the courts can only be that their assets may be distributed ratably to creditors. A general assignment without preferences does not defeat this purpose, but, if the estate of a corporation comes into the court or into the hands of the assignee burdened with preferences, there is an end of equal distribution, and the object of the law is defeated.

Some other points in this case require decision.

1. On the 24th day of January, 1891, the court, on the representation of the appellant, appointed a receiver of the property of the corporation, and of the corporation itself. On the 6th day of March, 1891, O. R. and L. B. Smith filed their complaint in intervention under leave of the court, alleging that they had on the 16th day of February, 1891, recovered a judgment against the Huron Lumber Company for $918.75, which would be a lien upon certain property embraced in appellant's mortgage, but for the receivership. Other allegations of the complaint were sufficient to attack the mortgage. Appellant contends that, because the Smiths' complaint was not filed until after he had made a motion for a default against the defendant, he should not have been stopped in obtaining his judgment and decree of foreclosure. Section 156, Code Proc., pro-

vides that an intervention may be filed "before trial," and we think this one was therefore in time.

2. Numerous other creditors of the Huron Lumber Company, who had not obtained judgments and had no liens, and were simple contract creditors, were allowed to file so-called interventions, and the cause was then kept waiting until they could sue at law and obtain judgments, when they came in again and filed supplemental complaints. This, under the statute and the authorities, was wholly irregular. Under a statute exactly like ours, the supreme court of California, in the leading case of *Horn v. Volcano Water Co.*, 13 Cal. 62, 73 Am. Dec. 569, held that a simple contract creditor of a common debtor could not intervene in a foreclosure suit. Our statute also provides that no intervention shall be cause for delay in the trial of an action between the original parties. Code Proc., § 157. Intervention, as we have it, is a peculiar proceeding, and should not be extended so as to take the place of equity suits, which furnish ample remedy in most cases. The error committed is not, however, available to the appellant, excepting in the disposition of the case made hereafter.

3. The court below disposed of the case and the property by holding the appellant's mortgage void, and directing the receiver to sell the property, and, after paying the costs of the receivership, to pay in full the judgments of the intervenors, and the balance, if any, to the appellant. We cannot approve this disposition for several reasons: At the time when the Smiths filed their intervention, the court had already adjudged the corporation to be an insolvent, and brought the whole of its property into the court by the appointment of a receiver. Appellant seems to maintain that the appointment of the receiver was only in aid of his effort to preserve the mortgaged property for his benefit, and appeals to the evidence in the case to show

that the company was not insolvent, but only embarrassed, since the value of its assets was estimated by witnesses to be more than its liabilities. But when we turn to the affidavit of the appellant himself, upon which the motion was made by him for the appointment of a receiver, we find that he did not allege merely such matters as were necessary to entitle him to a receiver of the mortgaged property *pendente lite*, but he charged generally that the corporation was insolvent, and wholly unable to pay its just debts as they became due in the course of its business; that it had present liabilities to the amount of fully $40,000, with available assets of but half that much; that it had closed business, stopped working its mill, and thereby put an end to all its income; that it was necessary that steps be taken to continue the working of its mill to secure the application of its rents and the profits of its business to the repayment of the claim of appellant and its other liabilities. No denial of these allegations was made by the company, and the court took the appellant at his word, and appointed a receiver generally on the 24th day of January. Therefore the *status* of the corporation and its property was, as it was adjudged to be on the petition of the appellant on the day the receiver was appointed, unaffected by testimony taken many months later. The receiver, having been thus appointed, represented the corporation and all of its creditors. He was a trustee for both. It was his duty, under the orders of the court, to take proof of all claims presented to him; to recommend the allowance of those which he deemed just, and the disallowance of such as were improper. It was not necessary that any claim thus presented should be in the form of a judgment, or that there should be technical interventions. If claims were disputed by the receiver, the court had full power to decide the points at issue, calling in a jury if necessary. Any creditor, having proved his claim, would have the right to contest the claim of any

other creditor, if the receiver should fail or refuse to do; so in a proper case. In a word, this was a fund in court, the beneficiaries of which should receive their respective shares as expeditiously as the nature of the property would permit, and the principles governing the proceedings are substantially those enacted into statutes of insolvency in the states and into bankruptcy acts by the United States. It was just as much the duty of the receiver in this case to oppose the appellant's mortgage as though he had been an assignee in bankruptcy or insolvency; for, although the corporation could not dispute it, he was the trustee for other creditors who could, and it was his duty to act in their interest, to the end that all creditors should share alike. Both parties seem to have overlooked all these matters, and have proceeded as though they could expect to be paid in full, leaving other creditors nothing, there being, as appears in the case, a number of creditors who did not intervene. But the race is not to the swift alone when the prize is in a court of equity for equal distribution. Neither do we agree that the appellant and Ball should be placed upon any other footing than other creditors. The court below finds that their money, to the amounts represented by their notes, was received and used by the corporation, and, notwithstanding their preference failed, their debts being *bona fide*, entitles them to participate in the fund. *Stratton v. Allen*, 16 N. J. Eq. 229; *Rouse v. Merchants' National Bank, supra*. Ball, to be sure, was a stockholder and director, but that does not estop him. *Bristol Milling, etc., Co. v. Probasco*, 64 Ind. 406; Wait, Insolv. Corps., § 156. If, through any delinquency of his as a director, the corporation has suffered, the receiver can yet, under the direction of the court, cause him to make good the loss.

Our conclusion upon the whole case is that the court's decree adjudging appellant's mortgage void be affirmed, and its

decree of distribution be reversed. And thereafter the cause will be remanded, with instructions to the court below to direct the receiver to take proof of claims against the Huron Lumber Company as they existed on the 24th day of January, 1891, without any subsequent additions of interest or costs of suits, and to proceed thereon according to this decision. Inasmuch as the intervenors took upon themselves the burden of opposing appellant's mortgage, although irregularly, they will be allowed, before the final distribution, their costs incurred in defeating the mortgage, that is, upon the trial of the case, and a reasonable attorney's fee of $100; and the appellant will be allowed his costs of this appeal before the final distribution, standing, as to his costs, on the same footing as the intervenors.

ANDERS, C. J., and SCOTT, DUNBAR and HOYT, JJ., concur.

### ON PETITION FOR REHEARING.

STILES, J.—Counsel in this case, as in some others, have urged that they be permitted to argue the application for rehearing orally. Reference to Code Proc., § 1439, will show that such a practice is out of the question, as the legislature has seen fit to regulate the matter very definitely by providing that the petition shall itself be the argument therefor.

Much of this petition is devoted to showing that the finding of fact made by the superior court, that the Boston National Bank had knowledge of the acts of the Huron Lumber Company, was unsupported by the evidence. But we view this point as immaterial, and an ordinarily careful reading of the opinion filed would have obviated the labor expended upon it. The superior court gave as the reason for its judgment the knowledge of the *cestui que trust* of the course of dealing after the mortgage; we say, that admitting the reason not to be well founded, there was a good reason for the judgment, in that the mortgage itself, upon

its face, contained its own defeat.   A judgment will not be disturbed because the reasons given for it were not sound, when there were good reasons for its entry.

It seems to be taken by counsel that we have insinuated some sort of conspiracy to hinder and delay the creditors of the Huron Lumber Company between its officers and the bank; but it is not so.   The terms of the instrument they drew make a hindrance and delay legally certain as the effect of their action, and that is all there is of it.   The law simply does not sanction such a dealing between an insolvent debtor and the holder of an antecedent debt.

Our decision is vigorously attacked by reason of its adoption of the "trust fund" theory, and it is argued that *Rouse v. Merchants' National Bank*, 46 Ohio St. 493, 15 Am. St. Rep. 644, was decided upon Ohio statutes, of which we have none.   But careful reading of that case shows that, with one or two exceptions, the statutory provisions there alluded to were identical in substance with our own, and an examination of the statutes of Ohio on the subject of corporations further reveals the similarity. If, therefore, as it is contended, the adoption of the "trust fund" theory has everywhere depended upon statutes, the appellant has no ground to stand upon, for we have the substance of all the statutes on the subject, with the addition of one expressly giving jurisdiction to the courts to appoint receivers of insolvent corporations.

We think the appellant has received due and even liberal consideration in this case, and his petition must be denied.

ANDERS, C. J., and DUNBAR, SCOTT and HOYT, JJ., concur.