[No. 1353. Decided June 1, 1894.]

A. M. BROOKS, *Trustee, Appellant,* v. THE SKOOKUM MANUFACTURING COMPANY, *Defendant,* FIRST NATIONAL BANK OF MOUNT VERNON, *Intervenor* and *Respondent.*

INSOLVENT CORPORATION — PREFERENCES.

Where a corporation is conducting a profitable business it is not chargeable with insolvency from the fact that its indebtedness is in excess of its assets; and a *bona fide* chattel mortgage given under such circumstances is not invalid on the ground of being a preference by an insolvent corporation.

*Appeal from Superior Court, King County.*

*Strudwick & Peters,* for appellant.

*Million & Houser,* and *Relfe & McCutcheon,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—In January, 1891, S. D. Silver and James Howe were partners, engaged in Seattle in the business of manufacturing boxes, furniture and other products of lumber. In that month they, together with James Keifer, organized as a corporation under the name of the Skookum Manufacturing Company, putting into the corporation the business and plant of the former copartnership at $50,000, and having a nominal paid up capital stock of that amount. This, however, was considerably in excess of the actual value of the property.

On the 25th day of February, 1891, said corporation, to secure a loan of $5,000, executed to the plaintiff a chattel mortgage on the stock, fixtures and buildings erected by them upon a lot leased by said corporation for the purpose of carrying on its business. Thenceforth, till the 22d of September, 1893, the corporation paid the interest accruing

on said mortgage debt and $600 on account of the princi-
pal.  Prior to this time one John H. Hall had bought into
the company and was elected its president.  On said 22d
day of September said Hall, as president, applied to the
plaintiff for a three months' extension of time, said mort-
gage debt being due, and stated that if plaintiff would ex-
tend the time of payment thereof for three months, he
could procure extensions from all the other creditors whose
debts were due, and by so doing he could provide for all
the indebtedness of the corporation except $2,000 which
was not due and which he would pay from his resources
and from the resources of the corporation's property as
it matured.  Said Hall on that day submitted to plaintiff
a written statement purporting to show the condition
of said corporation, whereby it appeared that the assets
were over $23,000, and the liabilities were less than
$13,000.  Several such statements had theretofore been
submitted at different times, by each one of which it
appeared that the corporation was possessed of property
amounting to considerable more than the total amount of
its indebtedness.  Plaintiff agreed to give the extension
desired, and to accept in lieu of the former mortgage the
mortgage in controversy in this action.  Whereupon said
corporation executed to the plaintiff, as trustee, the mort-
gage in controversy on all of its stock, plant and buildings,
being in great part the property included in the former
mortgage, to secure — *First*, The debt of $4,400, being the
remainder due upon plaintiff's note and mortgage aforesaid;
and *second*, the claims of other creditors amounting to about
$4,000, whose claims are set out in detail in the mortgage.
Whereupon the plaintiff canceled the former mortgage of
record.

The corporation had carried on its business continually
from the time of its organization up to and after the giving
of this last mortgage.  In November, 1893, in consequence

6—9 wash.

of the publication of certain matters relating to the previous doings of the said John H. Hall elsewhere, he suddenly left without notice for parts unknown. Whereupon plaintiff, as mortgagee, took possession of the property and continued the business; and in January, 1894, while continuing to operate the mill and plant of said corporation, the plaintiff brought this action to foreclose the mortgage last executed to him. Default was subsequently entered therein against said corporation.

Prior thereto the First National Bank of Mount Vernon filed its complaint of intervention in said action, by which it sought to avoid the chattel mortgage executed to the plaintiff, upon the ground that at the time it was given the corporation was insolvent and the giving thereof to the plaintiff constituted a fraudulent preference of creditors. Testimony was introduced by the plaintiff and said intervenor upon the trial of the matters so brought in issue; whereupon the court found against the plaintiff, and held the mortgage void, and this appeal is prosecuted therefrom.

It is contended by the respondent that this action falls within the rule laid down in *Thompson v. Huron Lumber Co.*, 4 Wash. 600 (30 Pac. 741), and that the trial court was of this opinion. But it seems to us that a substantially different case is presented. It is true the value of the property owned by the corporation at the time said mortgage was executed, leaving its "good will" out of consideration, was below the amount of its liabilities, as Hall had placed too high a value on the machinery, etc.; but the testimony is uncontradicted that said corporation had conducted its business regularly and continually from the time of its incorporation up to the time Hall left as aforesaid. Respondent contends that the same had been a losing business, but there is nothing in the proof to sustain this. The property owned by the company had not materially changed in value, although doubtless some of it was rather

the worse for wear in consequence of continued use. It is
not shown that any material additions were made thereto,
nor that any were needed, and there is no proof to show
the amount of money made by the corporation during this
time; but there is proof that it had conducted a profitable
and paying business, and there was testimony practically
uncontradicted to show that the business had held its own
during the time it had been operated by the plaintiff, and
that that was the dullest season of the year, and it was ex-
pected it would materially increase within a very short
time, in consequence of reaching a more favorable part of
the year and of receiving increased orders, then in prospect
or pending, for its products. That the "good will," though
not as valuable as formerly, in consequence of greater com-
petition, was yet a valuable asset, and it was to preserve
this that the plaintiff had assumed and continued the oper-
ation of the plant. No question is made but that the first
mortgage executed to the plaintiff was a valid one, and the
second covered largely the same property, although some
additional property was included. An attempt was made
by the respondent to show that at the time the second
mortgage was executed the company was threatened with
suits and had practically ceased to do business, but the
proof fails to sustain this contention. It appears that
Hall intimated to the plaintiff, at the time he applied for
the extension, that he was being pressed somewhat by
other creditors, but that he could get an extension of all
the company's indebtedness then due, etc., providing the
plaintiff would extend the time of payment of his mort-
gage. This was done as stated, and the company there-
after carried on its business apparently in a satisfactory
manner to all persons interested, until the time its presi-
dent left as aforesaid, which naturally precipitated action
on the part of the creditors.

The proofs do not disclose that at the time this second

mortgage was executed there was anything substantially wrong with the affairs of the company. That it then owed more than the value of its property, aside from its good will, would not necessarily prevent its continuing business, and the business may have previously been a very paying one notwithstanding this. Dividends may have been declared, and it was for the respondent to show such a state of affairs as would avoid the mortgage, even if it be conceded that if its business had been a losing one this would have been sufficient to avoid the mortgage. That fact standing alone, however, clearly would not be sufficient for this purpose.

It seems that Hall, during the time he conducted the affairs of the company, had established a good local reputation as a competent and trustworthy business man; his sudden abandonment of the management of the business could not have been foreseen, and we think the plaintiff was justified in assuming from the apparent condition of the affairs of the corporation that it was able and intended to continue its business; and we are strongly inclined to believe from the proofs that all the parties acted in good faith at the time the mortgage was given, and if it was valid then no subsequent developments or happenings would invalidate it. Its validity could in no wise depend upon what would happen in the future, relating to the company's business or management.

There was no attempt in the case of *Thompson v. Huron Lumber Co.* to lay down a rule that a corporation conducting a profitable business should be adjudged insolvent simply because at some particular time its assets did not equal the amount of its liabilities. What was said in that case was confined to corporations having practically stopped business, or reached a point where the corporate business could no longer be successfully prosecuted. The facts presented here are so essentially different from the facts

before the court in that case that the rule there laid down does not apply.

The judgment in this case is reversed and the cause remanded with instructions to enter a decree in favor of the plaintiff.

DUNBAR, C. J., and HOYT, ANDERS and STILES, JJ., concur.