### NELSON v. SVEA PUB. CO. et al.

(District Court, W. D. Washington, N. D.    April 26, 1910.)

#### No. 3,994. .

1. BANKRUPTCY (§ 166*)—PREFERENCES—RECOVERY OF PROPERTY—EXECUTION.

Bankruptcy Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), providing that if the bankrupt shall have given a preference within four months before filing the petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value, does not authorize suit by a bankrupt's trustee to recover property or its value sold by a creditor of the bankrupt under execution, where the creditor had no reason to suspect that the bankrupt intended thereby to give the creditor a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 175*)—SALE OF ASSETS ON EXECUTION—FRAUD.

Where property of a bankrupt was sold under execution in coercive adversary proceedings wherein the bankrupt's active opposition was overruled, such sale was not fraudulent as to creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 175.*]

3. CORPORATIONS (§ 544*)—INSOLVENCY—TRUST FUND.

Under the Washington law the assets of an insolvent corporation constitute a trust fund for the payment of its debts in which all its creditors are entitled to share ratably, and preferences given voluntarily by an insolvent corporation are void as to nonpreferred creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2162; Dec. Dig. § 544.*]

4. BANKRUPTCY (§ 180*)—INSOLVENT CORPORATION—ASSETS—EXECUTION SALE —FRAUDULENT ASSETS.

A consummated sale of an insolvent corporation's assets within four months prior to bankruptcy in adversary proceedings, not being made on the bankrupt's part with intent to hinder, delay, or defraud creditors, was not invalid under the Washington law, and was, therefore, not invalid under Bankruptcy Act July 1, 1898, c. 541 § 67e, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3449), vacating transfers by the bankrupt within four months, made with a purpose and intent to hinder, delay, and defraud creditors, etc.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 252; Dec. Dig. § 180.*] .

5. BANKRUPTCY (§ 196*)—STATUTES—CONSTRUCTION—LIENS BY LEGAL PROCEEDINGS.

Bankruptcy Act July 1, 1898, c. 541, §§ 67e, 67f, 30 Stat. 564, 565 (U. S. Comp. St. 1901, pp. 3449, 3450), invalidating claims of liens obtained by legal proceedings, are not applicable where a lien obtained by an execution has been merged into a title by consummation of an execution sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 310; Dec. Dig. § 196.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. BANKRUPTCY (§ 140*)—ASSETS—TITLE—PROPERTY SOLD UNDER EXECUTION.

Where property of a bankrupt has been levied on and sold under a creditors' execution at the time bankrupt proceedings were instituted, the title to the property did not vest in the bankrupt's trustee by operation of law under Bankruptcy Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), specifying the property of the bankrupt which shall vest in his trustee from the date of the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

7. BANKRUPTCY (§ 11*)—COURTS—JURISDICTION.

The court of bankruptcy does not have the chancery power of a court of unlimited jurisdiction; its equity jurisdiction being limited to that conferred by Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 514 (U. S. Comp. St. 1901, p. 3418).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 11.*]

8. CORPORATIONS (§ 542*)—INSOLVENCY—SALE OF ASSETS—MANAGER'S AUTHORITY.

The manager of an insolvent corporation has no authority to sell its remaining assets without the consent of all its creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2154; Dec. Dig. § 542.*]

9. BANKRUPTCY (§ 140*)—CORPORATIONS—INSOLVENCY—SALE OF ASSETS—"PURCHASER IN GOOD FAITH."

Where the agent of an insolvent corporation sold its remaining assets without authority and without the consent of all of the creditors not in the ordinary course of its regular business, the purchasers were not purchasers in good faith in a legal sense, and the sale was subject to vacation by the corporation's trustee in bankruptcy as authorized by Bankruptcy Act July 1, 1898, c. 541, § 67e, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3449).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 4, pp. 3117–3121; vol. 8, p. 7672.]

In Equity. Suit by Israel Nelson, as trustee in bankruptcy of the Vaktaren Publishing Company, against the Svea Publishing Company and others, to avoid an alleged preference and to recover property, or its value, acquired by defendants through transfers alleged to be void as to creditors. On exceptions to the report of a Master in Chancery containing findings in favor of complainant. Sustained in part, and overruled in part.

Except as modified by additions thereto hereinafter set forth, the court approves the findings reported by the master in chancery, of which the following is a condensation:

(1) The American Paper Company and the Svea Publishing Company are Washington corporations, and the defendant Erickson is a citizen and resident of the Western district of Washington.

(2) The Vaktaren Publishing Company is a Washington corporation and is a bankrupt.

(3) On the 22d day of December, 1908, creditors of the bankrupt corporation initiated bankruptcy proceedings against it in this court, and on the 8th day of January, 1909, an order of adjudication of bankruptcy was duly entered, and the case was put in the hands of one of the referees in bankruptcy.

(4) The complainant is the duly elected and qualified trustee of the estate of said bankrupt.

(5) The prosecution of this suit was authorized by the referee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(6) The scheduled liabilities of the bankrupt exceed $5,000. The unsecured claims proved amount to at least $1,785. The expenses of administration amount to at least $1,000, and are unpaid, and no assets have come into the hands of the trustee.

(7) This suit has been dismissed as to some of the parties originally joined as defendants, and some of the property supposed to belong to the bankrupt estate when the suit was commenced has been eliminated from the case.

(8) On the 27th day of October, 1908, the American Paper Company caused an execution to be issued for the collection of a judgment theretofore rendered in its favor against the Vaktaren Publishing Company, by the superior court of the state of Washington for King county. Said execution was levied upon certain specified property of the Vaktaren Publishing Company, and on the 10th day of November, 1908, was sold at sheriff's sale to said execution creditor for the sum of $835, which amount was applied in satisfaction, pro tanto, of the said judgment, and on the same day the sheriff executed a bill of sale to said purchaser. In order to consummate the sale, the American Paper Company was obliged to pay and did pay, to the sheriff, $468.02 to satisfy claims for wages, and the further sum of $89.49 to pay the costs of the proceedings.

(9) At and previous to the time of the levy of said execution, the aggregate amount of property owned by the Vaktaren Publishing Company at a fair valuation was not sufficient to pay its debts, and the American Paper Company knew that said Vaktaren Publishing Company was insolvent.

(10) That in the month of November, 1908, the American Paper Company gave a bill of sale of the property which it had purchased at the execution sale to C. J. Erickson for a nominal consideration of $10, and Erickson knew that the Vaktaren Publishing Company was insolvent.

(11) That afterwards Erickson and other named defendants organized the corporation called the "Svea Publishing Company," and those of said corporation who became its officers and trustees are chargeable with knowledge of the insolvency of the Vaktaren Publishing Company.

(12) That thereafter and on the 1st day of December, 1908, the defendant Svea Publishing Company, well knowing that the Vaktaren Publishing Company was insolvent, purchased from said Vaktaren Publishing Company, through its manager, E. G. Falk, all of its outstanding accounts and bills receivable, subscription list, and other assets of every nature and description not included in the property sold at the execution sale aforesaid, and it paid said E. G. Falk therefor the sum of $750 for his own use and benefit, and said sum never went to said bankrupt, but was converted by said Falk with the knowledge and assent of said Svea Publishing Company, and that thereby the said Vaktaren Publishing Company and its estate was deprived of assets of the value of $750; and that the reasonable value of said property so purchased was the sum of $750; and that said purchase of the property of said bankrupt was not made for the present, fair valuation of the said property at the time it was bought; and that said defendant, Svea Publishing Company, was not a purchaser in good faith and for a present, fair consideration for the last above described property.

(13) That the Vaktaren Publishing Company, while insolvent as aforesaid, and with intent on its part to cheat, hinder, delay, and defraud creditors, assented to and aided in the several transfers of its property assets and effects above, in paragraphs 10, 11, and 12 of these findings, described, to said C. J. Erickson and Svea Publishing Company, both of whom, at their several and respective times of purchase of said property and assets, had knowledge of the insolvency of the said Vaktaren Publishing Company and of facts and circumstances sufficient to put them and each of them upon notice of the fact of the insolvency of said Vaktaren Publishing Company; and that said execution sale aforesaid and said transfers aforesaid thereafter made, and each of them, were void as to the creditors of said bankrupt and as to the trustee in bankruptcy, plaintiff herein.

(14) That the defendant Svea Publishing Company thereby, and by the transfers and bills of sales aforesaid, purchased and acquired and succeeded

to the possession of all the property and assets of every kind and nature owned by said Vaktaren Publishing Company.

The court makes further findings as follows:   The defendants are not guilty of intentional fraud.   They did not conspire together to acquire any of the bankrupt's property, dishonestly or without paying for it what they believed to be a fair price; nor intend to hinder, delay, or defraud creditors.

The litigation between the American Paper Company and the bankrupt which culminated in the execution sale was hostile, and the bankrupt did not intend to suffer that creditor to gain a preference over others in the collection of its judgment.

Robert C. Saunders, for complainant.

Shank & Smith, Carl J. Smith, and C. R. Barney, for defendants.

HANFORD, District Judge (after stating the facts as above).  The two transactions whereby the assets of the bankrupt were transferred must be severed, and the rights of the parties must be adjudicated, separately, by the rules of law and equity applicable to the distinct facts of each of them.  In the matter of the execution sale, there was no intention on the part of the bankrupt to make the transfer of its property, no intention to aid the American Paper Company in gaining a preference over other creditors, and the execution creditor did not have any reason to suspect any such intention on the part of the bankrupt.  Therefore section 60b of the bankruptcy law (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) does not authorize a suit by the trustee to recover that property or its value.  Nor did the bankrupt intend by the execution sale to hinder, delay, or defraud any of its creditors, that transfer of its property was effected by coercive proceedings, whereby its active opposition was overruled.  In this state the trust fund theory governs the rights of creditors of insolvent corporations in litigation concerning their conflicting claims, in equity. The rule deducible from the decisions of the state Supreme Court is this: The assets of an insolvent corporation constitute a trust fund for the payment of its debts, in which all of its creditors are entitled to share ratably; and preferences given voluntarily by an insolvent corporation are void as to nonpreferred creditors.   Thompson v. Huron Lumber Co., 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; Conover v. Hull, 10 Wash. 673, 39 Pac. 166, 45 Am. St. Rep. 810; Nixon v. Hendy Machine Works, 51 Wash. 419, 99 Pac. 11.

In the case of Compton v. Schwabacher, 15 Wash. 306, 46 Pac. 338, the opinion of the court contains dictum denying the right of a creditor of a corporation, having knowledge of its insolvency, to gain a preference by any means.  The case, however, only involved the validity of an attachment lien and contentions based upon a judgment by confession, and the preceding decisions of the same court, cited as authorities, do not support the broad proposition stated.  Therefore, that part of the opinion cannot be regarded as a solemn judgment establishing, by its authority, a local rule of law.  The courts of the state afford protection to nonpreferred creditors of insolvent corporations to the extent of annulling liens created by levying writs of execution issued at the instance of creditors for the purpose of gaining preferences; but the decisions do not warrant the assumption that a consummated execution sale is "held null and void as against the

creditors of" an insolvent corporation by the laws of this state. Therefore, this case, as to the property sold under execution to the American Paper Company, is not within the purview of subdivision "e" of section 67 of the bankruptcy law. Subdivisions "c" and "f" of the same section refer only to existing liens created by legal proceedings, and are not applicable to a case in which such a lien has become merged into a title by the consummation of an execution sale. In re Bailey (D. C.) 144 Fed. 214. The property did not belong to the bankrupt, and could not have been levied upon under an execution against it at the time of the initiation of the bankruptcy proceedings. Therefore, the title did not become vested in the complainant by operation of law as expressed in section 70 of the bankruptcy law.

This court does not have the chancery power of a court of unlimited jurisdiction. The whole of its jurisdiction over this case is conferred by the bankruptcy act, and, inasmuch as the specific provisions of that act do not authorize a decree in favor of the complainant, the case as to all of the property transferred by the execution sale and as to the American Paper Company must be dismissed. To that extent the defendant's exceptions to the legal conclusion contained in the report of the master in chancery are sustained.

Referring now to the second branch of the case, the findings as modified by the court contain all the elements necessary to a decree in favor of the complainant, based upon subdivision "e" of section 67 of the bankruptcy law. Although the purchasers of the property involved paid full value for it, their plea that they are purchasers in good faith is not valid as a bar to a recovery by the representative of creditors of the bankrupt corporation, because it is not true in a legal sense. Their purchase of that property was not an ordinary transaction in due course of a regular business, in which the authority of the manager who sold it to them might be reasonably presumed. Here the trust fund theory, which is an established rule of law in this state, has an important bearing, for by that rule the manager was deprived of authority to sell the remnants of the assets of the corporation without the consent of all of its creditors. The circumstances and conditions of the sale were sufficient to apprise the purchasers of such lack of authority and they must suffer the consequences of their imprudence in dealing with an unauthorized agent.

The exceptions, in so far as they refer to the second branch of the case, are overruled.