## HALE v. LANGE et al. (No. 9135.)

Court of Civil Appeals of Texas. Galveston. July 10, 1928.

1. **Sheriffs and constables** ⟜107—By failing to promptly levy, thereby causing loss to creditor, sheriff became liable for such loss (Rev. St. 1925, art. 3825).

Sheriff's failure to promptly levy upon and sell property subject to execution, thereby preventing judgment creditor from collecting his debt, rendered him liable to such judgment creditor for full amount of debt, interests, and costs (Rev. St. 1925, art. 3825).

2. **Sheriffs and constables** ⟜125(1)—Sheriff's good faith held no defense to summary proceeding for his failure to promptly levy (Rev. St. 1925, art. 3825).

In a summary proceeding against sheriff under Rev. St. 1925, art. 3825, for his failure to levy promptly, his good faith in relying on promise of debtor pay *held* no defense.

3. **Bankruptcy** ⟜159—Creditor's right to money received from execution sale held not affected by subsequent bankruptcy proceedings.

Bankruptcy proceedings instituted within less than four months after sale on execution of bankrupt's property *held* not to affect creditor's right to retain proceeds of sale, notwithstanding fact that defendant at time of sale did not own sufficient exempt property to pay debts.

4. **Sheriffs and constables** ⟜125(2)—In determining whether debtor was insolvent during four months prior to instituting bankruptcy proceedings, as affects summary proceedings against sheriff for failure to levy, exempt and nonexempt property should be considered (Rev. St. 1925, art. 3825).

In summary proceedings against sheriff under Rev. St. 1925, art. 3825, for failure to levy promptly, in determining whether debtor was insolvent at time sheriff's sale could have been had, which would have resulted in one creditor being paid within four months of instituted bankruptcy proceedings, *held* that property to be considered should include exemptions.

5. **Sheriffs and constables** ⟜125(1)—Sheriff in summary proceedings for loss from failure to levy promptly had burden of proving debtor would have instituted bankruptcy proceedings immediately had he levied execution on debtor's property (Rev. St. 1925, art. 3825).

In summary proceedings under Rev. St. 1925, art. 3825, to recover from sheriff loss caused by his failure to sell on execution property of defendant debtor subject thereto before institution of bankruptcy proceedings by such defendant, burden of proof that defendant debtor would have instituted bankruptcy proceedings immediately upon levy by sheriff *held* to be upon sheriff.

Appeal from Galveston County Court; E. B. Holman, Judge.

Action by Alvin T. Lange and others against O. B. Hale. Judgment for plaintiffs, and defendant appeals. Affirmed.

Earle P. Adams, of Crockett, and Williams, Neethe & Williams, of Galveston, for appellant.

Terry, Cavin & Mills, Marshall Butz, and W. D. Baggett, all of Galveston, for appellees.

PLEASANTS, C. J. This appeal is from a judgment against appellant for $334, rendered in a statutory proceeding against him for failure to promptly levy an execution issued on a judgment of the court below in favor of appellees against C. E. Jones and placed in the hands of appellant as sheriff of Houston county.

In their motion against appellant appellees alleged the rendition of the judgment against Jones, the issuance of an alias writ of execution thereunder and the placing of the same in the hands of appellant, as sheriff of Houston county, about August 21, 1924, and that the latter failed and refused to make any levy upon the property of Jones until about September 20, 1924, failed to advertise any of the property for sale until about November 15, 1924, and failed to pay over to plaintiff or the court any sums collected or made out of the property of Jones, and that the judgment under which the writ had been issued remained unsatisfied with the exception of the sum of $48.26.

The appellant in answer to the motion, in addition to pleading a general denial, alleged in substance that at the time the writ was placed in appellant's hands, and at all subsequent times, Jones, excluding such as was exempt from execution or forced sale, owned insufficient property measured at either its fair, actual, or market value to equal the amount of his debts, which aggregated more than $1,000, his property subject to execution being of the value of less than $350; that Jones was insolvent; that a levy made upon his property subject to execution would have been immediately followed by the institution by him of voluntary bankruptcy proceedings, which would have, under the Bankruptcy

Law (11 USCA), avoided any levy or any sale of the property under a levy, and that consequently the failure to levy on the property earlier than was done worked no injury to appellees, and, further, that as a matter of fact, within a period less than four months after the receipt of the writ by appellant Jones was upon his voluntary petition adjudged a bankrupt on November 6, 1924.

The one proposition presented and relied on by appellant for a reversal of the judgment is thus stated in his brief:

"In a summary proceeding such as this to recover damages from a sheriff for his failure to make a prompt levy of a writ of execution and a sale thereunder, no recovery can be allowed when it is affirmatively shown that a levy was in fact made upon all of the debtor's property subject to levy, that the goods were offered for sale without success and the writ returned showing these facts, and when it further appears that delay in making the levy and attempting the sale resulted in no injury to appellants in execution, because there was between the earliest time at which the levy could have been made and the time it was actually made no substantial change in either the property which could be reached or in the circumstances affecting a sale of it."

The evidence shows that the judgment against Jones was rendered and execution thereon issued and placed in the hands of appellant sheriff on August 21, 1924, as alleged in appellees' motion.

Appellant testified that a few days after he received the execution he saw the defendant Jones and told him that he had the execution against him, and that Jones fixed a day in the future and told appellant if he would wait until that time he would get the money and pay the judgment. He further testified:

"Relying on that, witness waited, and the next thing he heard he had a letter from Dublin-Shoemaker Grocery Company saying that Jones had made an assignment of his stock and fixtures. He then immediately went to Percilla, where they were, and nailed them up. They were already locked up, but witness nailed them, and that was on September 20, 1924. A short time after that he heard that the storehouse in which they were stored had been opened, so he went to Percilla again and took possession of them and carried them to Grapeland and stored them there. He then advertised them for sale, but did not get any bids, and when the referee in bankruptcy told witness to turn them over to him the witness did so. Those goods and fixtures were the only property Jones had which was subject to execution. They were about the same when witness received the writ of execution as they were when Jones went into bankruptcy. The stock was small and was worth about as much when he got the writ as on November 8, 1924. He went to Percilla right after receiving the writ of execution and saw the stock of goods of Mr. Jones. Did not make a levy at that time because he looked at the store and goods and it looked pretty slim to him, and he thought he could make a better collection by

depending on the promise of Jones than by levying on the goods and selling them. Just a short time before he had an execution against Jones for something over a hundred dollars, and Jones in that case told witness that if he would wait a few days he would pay it. Witness did so, and Jones did pay on the day he promised to.

"There were very little, if any, of the goods sold out of the stock between August 21 and November 7, 1924. The stock was mostly patent medicines and just odds and ends, and the times were dull, and besides that the goods were either locked up or nailed up nearly all the time. Mr. Jones' son had opened the stock of goods when witness went to Percilla, but none of them had been moved out or sold. Witness did not know what Jones owed and did not know whether he was solvent or not. Witness did know what property he owned. These goods and fixtures were the only property Jones owned upon which witness could have made a levy, all other property owned by Jones being exempt.

"Witness waited from August 21st until about September 20th before making a levy, for the reason that he was just trying to handle the matter in the best way and thought he was doing that. Considering the dull times and the condition of the stock of goods, witness does not think that he could have sold them for more than $100 if he had gone ahead as soon as he received the writ and advertised and sold them at execution sale. He could have gone to Percilla and made the levy on August 22, 1924, and properly advertised the sale and made it during the early part of September. He has already stated the reasons why he did not do that."

The defendant Jones filed a petition in bankruptcy on November 6, 1924, and was shortly thereafter adjudged a bankrupt. The following list of property filed with his petition was all of the property shown to have been owned by him at the time the execution came to the hands of appellant:

|  | Value. |
|---|---|
| 106½ acres of land in Houston county claimed as his homestead | $3,000 00 |
| Household goods, furniture, etc. | 250 00 |
| One horse | 30 00 |
| Two cows | 20 00 |
| One Chevrolet automobile | 300 00 |
| Stock of merchandise | 338 00 |
| Debts due him | 193 45 |

All of this property, except the stock of merchandise and the debts due him, was set aside to him as exempt property in the bankruptcy proceeding. He owed about $1,250 at the time he filed his petition, and owed the same amount when appellant received the execution. He testified that at the time appellant received the execution against him the stock of merchandise was worth about as much as when he filed his petition in bankruptcy, and that a fair valuation of the stock and fixtures was $350. He further testified that if appellant had levied the execution when he received it, that he (Jones) would have promptly filed his petition in bankruptcy.

[1, 2] The stock of goods was sold in the bankruptcy proceedings for the sum of $322. We think this evidence is sufficient to sustain the conclusions of the trial court that if appellant upon the receipt of the execution had promptly levied on and sold the stock of merchandise and fixtures of defendant Jones he would have realized therefrom a sufficient amount to have satisfied appellees' judgment. The appellant doubtless acted in perfect good faith in accepting Jones' promise to pay the judgment and in forebearing to execute the writ, but this is no defense in a proceeding of this kind; and if it can be reasonably inferred from the evidence that a prompt levy upon and sale of the debtor's property would have enabled the judgment creditor to collect his debt, our statute holds the dilatory officer liable therefor. R. S. 1925, art. 3825; Goodrich Rubber Co. v. Valley Plumbing & Supply Co. (Tex. Civ. App.) 267 S. W. 1036. The levy, advertisement and sale could have been completed by September 3, 1924, and if the property, as testified by the defendant Jones, was fairly worth $350 and the stock of merchandise was sold some months thereafter in the bankruptcy proceedings for $322, it is not an unfair inference that a prompt sale by appellant under the execution would have realized the amount of appellees' debt.

[3, 4] If a levy and sale had been promptly made and the proceeds of the sale paid over by the appellant to the appellees, the subsequent bankruptcy proceedings instituted within less than four months after the collection and payment of such proceeds to appellees would not have affected their right to retain same, notwithstanding the fact that the defendant Jones did not at that time own property exempt from execution sufficient to pay all of his debts. In considering the question of whether the seizure and sale or the conveyance of property in satisfaction of a debt by a debtor is an unlawful preference under the United States Bankruptcy Act (11 USCA), and void if made within four months of the institution of bankruptcy proceedings, exempt property owned by the debtor at the time of such sale cannot be excluded from consideration in determining the question of the solvency of the debtor. In Clifton Mercantile Co. v. Conway (Tex. Civ. App.) 264 S. W. 193, it is held that the definition of insolvency in the bankruptcy statute "does not exclude exempt property, and the value of such property should be considered in determining the issue of insolvency in a suit to recover preferences." The same holding is made in the following cases: In re Hines (D. C.) 144 F. 142; In re Matter of Kobre et al. (D. C.) 224 F. 106; La. Nat. Life Assur. Soc. v. Segen (D. C.) 196 F. 903.

If the property had not been sold prior to the bankruptcy proceedings, the institution of such proceedings within four months of the levy would have destroyed the execution lien, but if the sale had been consummated prior to the institution of the proceedings the sale would not have been void and the proceeds could not have been recovered from appellees by the trustee in bankruptcy. In re Weitzel (D. C.) 191 F. 463; Nelson v. Svea Pub. Co. et al. (D. C.) 178 F. 136.

[5] The defendant Jones testified that if the appellant had made the levy when he first received the writ, he (Jones) would have immediately instituted voluntary bankruptcy proceedings. There was no direct testimony to the contrary, but the court was not compelled to accept this testimony as true in view of all the circumstances shown by the evidence, which tended to contradict the witness' statement. He was testifying three years after the occurrence as to what his secret intention was at the time appellant notified him that he held the execution against him. He told appellant at that time, that if the execution of the writ was withheld he would get the money and pay the judgment, and said nothing about his insolvency, and gave no intimation of his intention to go into bankruptcy if the levy was made under the writ. After the levy was made, which was a month after appellant received the writ, instead of instituting bankruptcy proceedings he executed a deed of trust on the property and only resorted to bankruptcy proceedings when he discovered that the deed of trust lien would not defeat the execution lien. The burden of proof on this issue was upon appellant, and upon this state of the evidence the court was not required to find that if the levy and sale had been promptly made Jones would have prevented the collection of the debt by going into bankruptcy before the property could have been sold.

We think the judgment should be affirmed, and it has been so ordered.

Affirmed.