[No. 42206.    En Banc.    July 20, 1972.]

AMERICAN DISCOUNT CORPORATION, *Respondent*, v. SARATOGA WEST, INC., *et al.*, *Defendants*, MISSION RIDGE ESTATES, *Appellant.*

*Whitmore & Warren,* by *Thomas C. Warren,* for appellant.

*A. J. Westberg,* for respondent.

NEILL, J.—This appeal concerns the right of a general creditor of a mortgagor, asserting the mortgage transaction to be in fraud of creditors, to intervene in a mortgage foreclosure action.

Plaintiff, American Discount Corporation, commenced a mortgage foreclosure action against Saratoga West, Inc., in September, 1970. Mission Ridge Estates, by complaint in intervention and supporting affidavit, alleged that it is a general, unsecured creditor of the mortgagor, Saratoga West, Inc., basing its claim upon promissory notes; that Saratoga West, Inc., is insolvent, and that its sole asset is the property which is the subject of the foreclosure action; that the majority stockholders of both mortgagor and mortgagee corporations are identical; that the capitalization of mortgagor Saratoga West, Inc., was inadequate and was immediately exhausted as partial downpayment on the property in question; and that the mortgage transaction was, in fact, a device to shield the joint majority stockholders against legitimate claims of creditors. Mission Ridge Estates sought judgment against Saratoga West, Inc., on the notes and an adjudication that the purported loans by American Discount Corporation be deemed contributions to the capital of Saratoga West, Inc., and that the mortgage which is the subject matter of the main action be subordinated to the claims of Mission Ridge Estates and other similarly situated creditors.

The trial court denied the motion to intervene, struck the complaint in intervention and entered a decree of foreclosure. Mission Ridge Estates appeals.

None of the defendants have appeared in these proceedings and there is no claim that Mission Ridge Estates is adequately represented by any party to the foreclosure

action. Plaintiff, American Discount Corporation, opposed the intervention on the grounds that, as an unsecured creditor, Mission Ridge Estates has no right to any relief in the foreclosure proceedings, and neither has nor claims any right, title or interest in the real property being foreclosed.

█ The sole issue presented by the assignments of error is whether Mission Ridge Estates qualifies for intervention as a matter of right under CR 24(a)(2):

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As a preliminary matter, we note that, for purposes of determining whether Mission Ridge Estates satisfies the conditions for intervention, we look to the pleadings, accepting the well pleaded allegations therein as true. *See Stadin v. Union Elec. Co.*, 309 F.2d 912 (8th Cir. 1962).

Respondent cites our prior cases to the effect that unsecured creditors without a judgment have never been permitted to intervene in a foreclosure proceeding. *E.g., Hutteball v. Montgomery*, 187 Wash. 407, 60 P.2d 80 (1936); *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 P. 741, 31 P. 25 (1892). These cases accurately reflect our traditional rule as to the nature of "interest" requisite to intervention; *viz.*, that the interest must be so direct and immediate that the intervenor will either gain or lose by direct operation or immediate effect of the final judgment which may be entered in the main action. *State ex rel. Williams v. Superior Court*, 91 Wash. 40, 157 P. 28 (1916); *Hindman v. Colvin*, 47 Wash. 382, 92 P. 139 (1907). This requirement accorded with the interpretation given to the language of the pre-1967 rule 24 which required that an applicant for intervention "is or may be bound by a judgment in the action." *See* 39 F.R.D. 69, 109 (1966); 3A L. Orland, Wash. Prac. 490, 493 (2d ed. 1968). That language

was construed as stating that intervention of right would be possible only if the judgment would bind the absentee as a matter of res judicata. *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 6 L. Ed. 2d 604, 81 S. Ct. 1309 (1961); *see* 7A Wright & Miller, Federal Practice and Procedure: Civil § 1903 (1972).

In 1966 the comparable federal rule was amended and in 1967 we adopted that amendment verbatim. 71 Wn.2d lxv (1967). Thus, in examining the issue before us we may look to decisions and analysis of the federal rule for guidance.

The requirement under CR 24, prior to the 1967 amendment, that the interest of the party seeking to intervene be such that he will either gain or lose by direct operation or immediate legal effect of the final judgment (res judicata), combined with the requirement that representation of his interest by existing parties is or may be inadequate, was seen to pose a dilemma making intervention virtually impossible. An absentee having such an interest could not intervene if he were adequately represented, and could not intervene if he were not adequately represented since he could not then be bound by the judgment in the action. *See* 3B J. Moore, Federal Practice § 24.09-1[3] (2d ed. 1969); 7A Wright & Miller, *supra* at 472. The 1966 amendment to the federal rules, and the 1967 amendment to our civil rules, were partly designed to overcome this dilemma. As the advisory committee on federal rules noted:

> If the "bound" language [of the prior rule] was read litterally in the sense of *res judicata,* it could defeat intervention in some meritorious cases. . . . This reasoning might be linguistically justified by original Rule 24(a)(2); but it could lead to poor results. . . .
>
> The amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i) [in Washington, CR 19(a)(2)(A)], as amended, unless his interest is already adequately represented in the action by existing parties. The Rule 19(a)(2)(i) criterion imports practical considerations, and the deletion of the "bound" language similarly frees the rule from undue preoccupation with strict considerations of *res judicata.*

39 F.R.D. at 110; 3B J. Moore, Federal Practice § 24.01[10] (2d ed. 1969).

Looking to the new language and committee notes, we are moved to echo the words of the United States Supreme Court in reference to an earlier amendment of this rule: "We therefore know that some elasticity was injected; and the question is, how much." *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134, 17 L. Ed. 2d 814, 87 S. Ct. 932 (1967). In the case at bench, American Discount Corporation strenuously argues that our 1967 amendment had no effect on the kinds of interests that are required under the rule, citing *Hobson v. Hansen*, 44 F.R.D. 18 (D.D.C. 1968). And it is elsewhere suggested that

> The liberalization of Rule 24(a) was not aimed at revising the nature of the applicant's interest, but was focused mainly on relaxing the requirement that the applicant would be bound under the doctrine of res judicata.

3B J. Moore, Federal Practice § 24.09-1[2], at 24-301. Professor Moore refers to, and American Discount Corporation relies upon, the following language from *Hobson v. Hansen, supra* at 24:

> [W]hile one's interest need no longer be decisively affected before intervention will be allowed, there is nothing in the new rule or in its attendant commentary to indicate that it effected a change in the kind of interest required. Thus the thrust of the revision seems clearly to be concerned with adequacy of representation and not with any notion of expanding the *types* of interests that will satisfy the rule. Still required for intervention is a direct, substantial, legally protectable interest in the proceedings.

(Footnote omitted.) On appeal, the Court of Appeals for the District of Columbia, sitting en banc, took a different view of the amended rule 24(a) and after considerable analysis concluded that certain of the absentees were entitled to intervention of right. *Smuck v. Hobson*, 408 F.2d 175, 177-82 (D.C. Cir. 1969). There have been a significant number of cases arising under the 1966 amendment reaching diverse results. *See* 7A Wright & Miller, § 1908, n.31 at

506, and accompanying text; *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967). *Cf.* 7A Wright & Miller, § 1908, 511-13 n.43; 3B J. Moore, Federal Practice § 24.09-1[2], n.6 at 24-302 (1971 Supp. 42-43).

The United States Supreme Court has addressed itself to the amended rule 24(a)(2) in two cases. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co., supra; Donaldson v. United States*, 400 U.S. 517, 27 L. Ed. 2d 580, 91 S. Ct. 534 (1971). As to these cases, it has been observed that each

> hardly can be read without giving thought to its facts. A broad reading of the intervention rule was thought necessary in Cascade in order to protect the public interest in effective competition. A narrow reading of the intervention rule was thought necessary in Donaldson in order to protect the public interest in prompt and effective investigation and enforcement of the revenue laws. The Donaldson case is greatly colored by the fact that this is a special summary proceeding in which the rules are not universally applicable.
>
> For these reasons, it seems that any attempt to extrapolate from Cascade or from Donaldson, and to deduce from those cases rules applicable to ordinary private litigation, is fraught with great risks. The Court did say in Donaldson that the word "interest" in Rule 24(a)(2) "obviously" means "a significantly protectable interest." [400 U.S. at 531]. Lower courts cannot ignore this direct interpretation of the rule by the Supreme Court. But "significantly protectable interest" has not been a term of art in the law and there is sufficient room for disagreement about what it means so that this gloss on the rule is not likely to provide any more guidance than does the bare term "interest" used in Rule 24 itself.

(Footnote omitted.) 7A Wright & Miller, § 1908, at 502.

From the foregoing it is seen that little direct guidance can be obtained from the unsettled and various constructions that have been placed upon the 1966 amendment to rule 24 in the federal courts. We have not been directed to, nor have we found, any case decided since the amendment involving the interests asserted in this appeal. It may be that the best response to this situation is that expressed by

Judge Blackmun in the earlier case of *Kozak v. Wells,* 278 F.2d 104, 110 (8th Cir. 1960):

> Cases exactly in point have not been found or suggested in the briefs. Neither do the cases readily align themselves so as to afford helpful working rules for the trial courts to whom these intervention questions are presented. This is probably because the standards for intervention are not absolute but intentionally have been made somewhat flexible. We are driven, therefore, to the unhelpful and not infrequent conclusion that perhaps each case is to be decided and explained largely on its own facts and this may be the only way to reconcile the results in the reported cases.

In *Kozak,* the court was influenced to allow intervention by the fact that such would be in line with the command of rule 1 (CR 1) that the rules be "construed to secure the just, speedy, and inexpensive determination of every action," with the general tendency to greater liberality toward third party practice, and with the same liberal attitude expressed specifically toward rule 24(a) (*Kozak v. Wells, supra* at 111-12). These considerations, even more pertinent in light of the 1966 amendments to rule 24, incline us toward the more liberal and, we think, more analytical approach taken by the courts in *Smuck v. Hobson, supra,* and *Nuesse v. Camp, supra.*

In *Smuck v. Hobson, supra* at 178-80, the court reasoned:

> The effort to extract substance from the conclusory phrase "interest" or "legally protectable interest" is of limited promise. . . . [I]n the context of intervention the question is not whether a lawsuit should be begun, but whether already initiated litigation should be extended to include additional parties. The 1966 amendments to Rule 24(a) have facilitated this, the true inquiry, by eliminating the temptation or need for tangential expeditions in search of "property" or someone "bound by a judgment." It would be unfortunate to allow the inquiry to be led once again astray by a myopic fixation upon "interest." Rather, as Judge Leventhal recently concluded for this Court, "[A] more instructive approach is to let our con-

struction be guided by the policies behind the 'interest' requirement. * * * [T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." [Citing *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C.Cir. 1967).]

The decision whether intervention of right is warranted thus involves an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending. Since this task will depend upon the contours of the particular controversy, general rules and past decisions cannot provide uniformly dependable guides. . . . [T]here is no apparent reason why an "economic interest" should always be necessary to justify intervention. The goal of "disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process" may in certain circumstances be met by allowing [intervenors whose only "interest" is personal, rather than economic or a "property interest"] to intervene. In determining whether such circumstances are present, the first requirement of Rule 24(a)(2), that of an "interest" in the transaction, may be a less useful point of departure than the second and third requirements, that the applicant may be impeded in protecting his interest by the action and that his interest is not adequately represented by others.

This does not imply that the need for an "interest" in the controversy should or can be read out of the rule. But the requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task. If those requirements are met, the nature of his "interest" may play a role in determining the sort of intervention which should be allowed—whether, for example, he should be permitted to contest all issues, and whether he should enjoy all the prerogatives of a party litigant.

(Footnote omitted.)

■ In the foregoing pages we have gone to some length attempting to capture the meaning of the term "interest" as used in the amended rule 24(a) and have found a broad range of possible interests which elude satisfactory classification under the terms of the rule. *See* Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv. L. Rev. 721, 729-40 (1968). A proper determination of the sufficiency of the claimed "interest" of a particular intervenor cannot be made in a vacuum, out of the context in which the claim is asserted. Rather, it is for the court in each instance to analyze and balance the relative concerns, not only of the absentee in having his interest protected, but also of the parties to the main action in controlling their own lawsuit, and of the public in the efficient resolution of controversies.

In the case at bench, Mission Ridge Estates, while not claiming a vested legal interest in the nature of a lien, does claim a substantial economic interest in the property based upon its nature as the sole asset of its debtor. In conjunction, Mission Ridge Estates claims an interest in the subject mortgage transaction, asserting that the transaction was a device to conceal a contribution to capital and thereby defraud legitimate creditors. Such allegations go to the good faith of both original parties. We do not determine the legitimacy of these claims. The attack on the validity of the mortgage transaction goes to an essential element of the foreclosure action. Assuming the truth of these claims, the intervention would contribute to the litigation from the public standpoint, by preventing a multiplicity of actions. *See* Ballantine, Corporations § 129 (1946). It is hardly arguable that the disposition of the foreclosure action "may as a practical matter impair or impede" the ability of Mission Ridge Estates to protect its interests. The mortgaged property is the intervenor's sole source of redress. Further, to deny intervention forces a multiplicity of actions involving these same parties. Under these particular circumstances, the pleadings of Mission Ridge Estates entitle it to intervene under CR 24(a)(2).

■ Plaintiff suggests the motion for intervention was not timely filed. The action was filed September 1, 1970; the motion and first complaint in intervention were filed September 24, 1970; the final amended complaint in intervention was filed November 24, 1970. A hearing for judgment after default was held and judgment entered January 22, 1971. The claim of right to intervene was thus raised prior to trial and judgment and was thus timely. *See Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 P. 741, 31 P. 25 (1892); *Colburn v. Spokane City Club*, 20 Wn.2d 412, 147 P.2d 504 (1944).

Reversed and remanded for further proceedings in accordance herewith.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, STAFFORD, WRIGHT, and UTTER, JJ., concur.